## WOOLLEY *v.* UEBELHOR ET AL.

[No. 357, September Term, 1964.]

---

*Decided June 25, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, SYBERT and BARNES, JJ.

*William A. Ehrmantraut,* with whom were *Donahue, Ehr-
mantraut & Mitchell* on the brief, for the appellant.

*George J. Goldsborough, Jr.,* for Dorothy Uebelhor, one of
the appellees.

*Carlyle J. Lancaster,* with whom were *Welsh & Lancaster*
on the brief, for Chaney, another appellee.

Submitted on brief by *Cornelius H. Doherty* for the Chrysler
Corporation, another appellee.

No brief and no appearance for Banning, the other appellee.

HAMMOND, J., delivered the opinion of the Court.

Three alternatives were presented to the jury in this case—
did the driver of a car which crashed into the rear of another
car standing at a red light fail to apply sound brakes soon
enough or did the brakes suddenly and unexpectedly fail to
work or, if they did so fail, had the driver such advance warn-
ing that they might so fail as to make it negligent to operate
the car on the road. The jury found a verdict against the driver
of the striking car in favor of the driver of the standing car.
This appeal challenges the refusal to grant an instructed ver-
dict for the striking driver, the granting of instructed verdicts
for both the manufacturer of the striking car and the dealer
who sold it at retail, and various aspects of the court's charge
to the jury.

The amended declaration alleged that the plaintiff, one Dor-
othy Uebelhor, was, with due care, driving an automobile which

she had stopped "in obedience to a traffic light" when the defendant, Linda Woolley, a girl then sixteen, driving her father's car, ran into the rear of the plaintiff's car causing severe injuries, extended incapacity and permanent harm. It was further alleged that Linda Woolley operated her vehicle in a negligent manner in that she drove it too fast, failed to keep it under control and to maintain a proper lookout, and to stop it when she saw or reasonably should have seen the standing car in peril. The third party defendant, the Chrysler Corporation, was said to be liable because it "did negligently manufacture the braking system on the said vehicle so as to make it inherently dangerous" to users of the highway; the third party defendant, Banning & Sons Motors, Inc., was alleged to have negligently failed in its duty "to inspect and render safe said vehicle" before selling it, and the third party defendant, Chaney's Garage, was claimed to have negligently failed, after having undertaken to do so, in its duty "to inspect and repair said [brake] system in a proper manner."

The testimony was that the Woolley car, a Dodge Polaris, had been bought new in January 1960 from Banning. At the time of the accident on October 17, 1961, it had gone some 16,000 miles. On two occasions in the spring of 1961 Mr. Woolley, while backing down his driveway, which inclined somewhat sharply to the street, briefly experienced the sensation of having no brakes but as soon as he began moving forward the brakes worked normally. Mrs. Woolley recalled two similar experiences. (It is not entirely clear that Mr. and Mrs. Woolley were not telling of the same two occasions.) On May 13, 1960, the Wooleys took the car to Banning, complaining of "brake fade at high speed" and Banning, under warranty, ground the linings on both brakes to remove a high glaze, and resurfaced both drums. On June 27, 1960, Woolley, complaining of the grabbing of the left front brake, again took the car in to Banning who found the left drum "out of round" and resurfaced it. On neither trip was there mention of any other trouble with the brakes.

Four or five days before the accident Mrs. Woolley said the brakes failed almost completely ("I could stop the car * * * it would gradually stop * * *") and, after driving very slowly

to Chaney's garage, related what had happened to Mr. Chaney, who turned the car over to his most experienced mechanic, one Flynn. Flynn testified that the car had a "good half a solid pedal" (he said many, many customers bring a car in saying they have no brakes when they have an inch or more of pedal and need only mechanical adjustment). He drove the car around, testing the brakes and on his return to the garage "expanded the brake shoes out to the drums," checked for leaks, including the master cylinder, and checked the brake fluid, finding the cylinder full. This was reported to Mrs. Woolley when she picked up the car in the evening and was surprised to be charged only two dollars. Chaney produced testimony that what it did was what any competent and experienced garage mechanic in the area reasonably would have done in similar circumstances.

The further testimony was that Linda had not ever known of any trouble with the brakes except that as a result of a conversation at the dinner table the night the car came back from Chaney's she learned that her mother had taken the car there that day to have the brakes adjusted.

Mr. Woolley, Mrs. Woolley and Linda each drove the car in the four or five-day interval between its visit to Chaney's and the accident, and had no trouble with the brakes; Linda used the brakes successfully several times before she attempted to use them to stop behind the plaintiff's car.

Testifying as to the accident, Linda said she saw the traffic light turn yellow as she was coasting towards it, stepped on the brake pedal and found she had no brakes—began to pump them and, very close to point of impact, felt them finally catch. The girl who was riding with Linda said that Linda cried out just before, at, or immediately after the impact, that the brakes had failed, and the plaintiff testified that Linda came up to her after the crash and said her brakes did not "hold enough." The policeman who arrived first checked Linda's car's brakes and found a good pedal. Linda's car laid down two four-foot skid marks up to the point of impact, although the plaintiff said Linda's car, as she watched it in the rear view mirror, did not decrease its speed before it struck her car.

After the accident the master cylinder in the Woolley car was torn down by Banning's mechanic, Spence, who found that the

rubber "primary cup" in it (part of the function of which is to seal the cylinder to maintain pressure) had a chip out of its rim or lip. It was his opinion that this would not ever cause a complete brake failure but, rather, that "you would have a pedal but there it would be low, spongy." The brakes would hold and stop the car but take longer to do so. The condition would not be discovered by a normal brake inspection. A graduate engineer employed by Chrysler, with long experience in working with design and operation of their braking systems, testified that the defect in the primary cup described by Spence would cause complete brake failure and that there would never be regeneration of pressure. It was his opinion that temporary failure or impairment of the brakes and then again normal holding was due to some foreign particle getting into the cylinder and affecting pressure and thereafter being washed away by the brake fluid. He said Chrysler did not manufacture the master cylinder in the 1960 Dodge Polaris cars but, rather, bought it from Lockheed which did. An expert called by the plaintiff testified that Spence had told him what he found and, accepting Spence's statements as accurate, there were three possible causes for the defect in the primary cup—a "bur" or roughness in the enclosing cylinder which wore or tore the rubber cup (Spence said that except for the cup he had found the master cylinder to be entirely normal), improper installation, or imperfect manufacture (without in either case giving specifics). This expert's opinion was that a tear in the primary cup could on a sudden and unexpected occasion cause total or partial loss of pressure with consequent brake failure, while generally there would be effective sealing which would permit proper braking.

Turning to the appellant's contention that she was not negligent as a matter of law, we find it clear from the testimony that the question was one for the jury. From the testimony of various witnesses it could properly have been found that the plaintiff's car had been at rest at the red light for an appreciable period of time before it was struck, that the Woolley car did not decrease its speed, that it laid down four-foot long skid marks, that shortly before and immediately after the accident the brakes were in effective working order, and that expert opinion was that even when the brakes became impaired from

time to time they would hold and stop the car if put on in time.

Together this painted a picture which a jury could recognize as negligent failure to control a car which if properly operated could be controlled. *Baltimore Transit Co. v. Prinz,* 215 Md. 398, 403.

We find no error in the court's directing a verdict for Chrysler and Banning. To make Chrysler liable to a user of the highway for a sudden and unanticipated failure of the brakes on the Woolley car, it must have known, or, from facts known to it, realized, that the car was, or was likely to be, dangerous in operation. Restatement, Torts Secs. 388 and 395; *Babylon v. Scruton,* 215 Md. 299; *Twombley v. Fuller Brush Co.,* 221 Md. 476. There was no testimony rising above possibility or speculation that at the time Chrysler sent the car from its plant it knew or should have realized that it was dangerous or potentially dangerous inherently, and hence there was no basis on which a jury could have found it negligent.

The same considerations applied to Banning and justified its dismissal from the case. A vendor of a chattel which another has manufactured who sells it knowing that it is or is likely to be dangerous has the liability of a manufacturer if the dangerous condition causes the chattel to cause harm, Restatement, Torts Sec. 399, and such a vendor, like a manufacturer, is subject to liability if, although ignorant of the dangerous character or condition, he could have by the exercise of reasonable care discovered it by utilizing the peculiar opportunity and competence which he has or should have as a dealer in such chattels. Restatement, Torts Sec. 402. The evidence discloses that Banning had no actual knowledge of any defect in the Woolley car until after the accident and offers no basis for a finding that it did not at all times exercise reasonable care in respect of the braking system. All the witnesses on this aspect of the case agreed that the reasonable and ordinary inspection and review of the braking system of the Woolley car by those peculiarly competent in the field would not have revealed the defect ultimately discovered.

Judge Digges sent the case to the jury against Linda Woolley and Chaney, and the jury exonerated Chaney and found

a verdict against Linda, who argues to us first, that the finding of liability on her part was the result of the erroneous instructions of the court and, second, that the amount of the damages awarded was caused to swell by the charge that the jury could find an aggravation from the accident of preexisting maladies or conditions for which the testimony offered no support.

Judge Digges instructed the jury that they should first determine whether or not the accident happened as a result of a sudden brake failure and, if their answer was that it did not, the law is that an operator must keep her car under control so as not to run into a vehicle in front of her and, since it was conceded that the plaintiff was not in any way negligent and was standing still where she should have been so standing, then their verdict should be against Linda Woolley alone. Linda complains that this instruction "* * * violated the province of the jury to be the finder of facts and to determine if any negligence on the part of the appellant was the proximate cause of the accident." We think the virtually undisputed facts which were set forth above as justifying the denial of an instructed verdict for Miss Woolley (and which Judge Digges in effect summarized in his charge) made the challenged instruction a correct statement of the law applicable to the facts of the case.

As to the other alternative fairly presented by the evidence —sudden unanticipated brake failure — Judge Digges went on to tell the jury that if they found from the evidence "* * * that there was a brake failure and that it was sudden, without warning, then your verdict should be in favor of Miss Woolley * * *." This instruction correctly stated the law. *Langville v. Glen Burnie Lines,* 233 Md. 181; *Garfinkle v. Birnios,* 232 Md. 402; *Currie v. United States* (4th Cir.), 312 F. 2d 1.

Judge Digges added a qualification which the appellant does not challenge, that if the jury found such a brake failure they must find that after Miss Woolley became aware of it, she could not thereafter have avoided the collision by the exercise of reasonable care. He then gave the instructions which form the basis for the appellant's strong argument of prejudicial error. Judge Digges at that point told the jury:

"In addition * * * in order to exonerate her [Linda Woolley] on the theory of her brakes failing you must determine from the evidence that it was sudden and without warning. * * * But I mean you can consider the warnings that she had in light of the testimony of her father and mother as to what information they had brought to her attention in discussions around the home about the brake condition or the brakes, about the brakes on this car in general discussion."

The jury then were told that Chaney would be liable if an ordinarily competent garage in the area would have found the defective cup from what Mrs. Woolley told it. Chaney's failure thus to find the defect could constitute negligence. Judge Digges then added that if Chaney's did not find the real trouble, told Mrs. Woolley they had not and asked her to bring the car back for a complete overhaul, "And Linda knew of that because of the discussion at home * * * she was obligated not to use the car," if a reasonably prudent person would not have done so under the circumstances, and both Chaney and Linda could be found responsible for the accident.

Linda Woolley says that the instructions as to her possible knowledge of defective brakes to which she duly excepted were unjustified because the amended declaration was not based on that theory and was never further amended to include allegations which would support that theory, and because there was no testimony that she had any such knowledge or warning of impending or potential trouble. We have concluded that the latter objection to the charge was and is sound. The testimony was that Linda had no knowledge of any trouble with the brakes before the evening of the day the car was at Chaney's. Both her father and mother further said flatly she knew only in a general way that the car had been taken to Chaney in order to have the brakes adjusted or worked on. She knew also that it was driven after it came from Chaney's by her father and mother and herself, as it customarily had been. That Linda knew the car had been taken to a garage to have the brakes worked on is not enough to present to a jury the question of whether she was negligent in later driving it, particularly when

she saw that the car was accepted by the family as in normal driving condition and as such entrusted to her, and the probable harm done by the court's telling the jury it could find Linda liable if they found she knew the brakes were defective and yet drove the car anyway was not cured by a later statement in the charge that if there was a sudden brake failure Linda would not be liable "* * * even though she might have heard some difficulty about the brakes discussed, if she had reason to believe it had been fixed * * *."

The appellee seeks to confess and avoid appellant's claim of error in the several instructions as to Linda's knowledge of defective brakes by the contention that, assuming the instructions based on Linda's knowingly driving an unsafe vehicle were erroneous, the verdict cured the error and no prejudice could have resulted. This result is based on the premise that the court told the jury they could find both Linda and Chaney liable if Chaney undertook to repair the brakes, failed in its duty to do so properly, told Mrs. Woolley it had not found the trouble and Mrs. Woolley told Linda of this, and on the conclusion that since the jury found only Linda liable it rejected the theory of a knowing use by Linda of an unsafe vehicle and, therefore, must have found that Linda negligently operated an inherently safe vehicle.

The weakness of this conclusion is that it relates the jury's reaction very precisely to only a part of the charge. We think that from the charge as a whole (a) the jury well might have been confused as to what role Linda's prior knowledge or warning of sudden prospective brake failure should play in the case, and the importance to be attributed to that knowledge or warning, or (b) they well might have determined that Chaney did all an ordinarily careful and competent garage would have done under the circumstances and did not callously send a dangerous vehicle out on the road, and at the same time have concluded that the brakes did suddenly fail, but that Linda had been put on notice "about the brake condition or the brakes, about the brakes on this car in general discussion," to use the words of the charge, and therefore was negligent in operating the car at all or in not operating it with extreme or more than usual caution. The testimony did not offer a foundation for the

various instructions as to Linda's prior knowledge of potential brake failure.

The testimony as to aggravation by the accident of a pre-existing condition was somewhat thin but both the plaintiff and her psychiatrist said there was a worsening after the accident of weaknesses which had existed before and this was enough to support the presentation by the court to the jury of the issue.

> *Judgment reversed, with costs, and case remanded for a new trial against Linda Woolley only.*