William H. **FINNIE**, Jr., Administrator of
the Estate of Wilmer O. Parker,
Deceased, Plaintiff,

v.

**FORD MOTOR COMPANY** et al.,
Defendants.

**Civ. A. No. 67–820.**

United States District Court,
W. D. Pennsylvania.

Sept. 21, 1971.

Paul A. Simmons, Monongahela, Pa.,
for plaintiff.

Henry E. Rea, Pittsburgh, Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

We are asked to grant a new trial in the within case following the entry of a directed verdict for the defendants at the close of plaintiff's testimony.

The complaint alleged that Wilmer O. Parker traveling alone on July 4, 1966, at about 8:30 P.M. was operating his Ford car on Interstate 70 east of Belle Vernon in Westmoreland County, Pennsylvania, when he reached a dip in the road. As he went in and out of the dip the steering mechanism of his Ford, which was about a year old, temporarily froze and in particular both upper ball joints of the steering mechanism failed, making it impossible to steer the car which caused the car to cross the medial strip where it was struck by an oncoming vehicle. In the collision Wilmer O. Parker was killed.

Ford Motor Corporation was sued as the manufacturer, Baron Ford of Charleroi, Inc. as the seller and Paul Baron as an employee of the seller.

Since it was apparent that there was no witness to testify to malfunction, the plaintiff was forced to rely on expert testimony alone. The plaintiff's pretrial statement did not contain a report of his expert although it listed one James Stewart who was assumed to be an ex-

**322**

pert. Accordingly the defendants deposed James Stewart, a mechanic, who said that he found a ball joint in the steering mechanism which seemed to catch when rotated, that this condition could have been caused by improper lubrication and that he was unable to state whether this condition existed when the car left the factory. He said improper lubrication could have occurred if the grease seals had been broken. He said the grease seals were broken but they might have been broken in the accident.

Ford Motor Company was sued under 402A of the Restatement but negligence was the theory directed at Baron Ford and Baron.

At the pretrial conference the deposition was offered as the expert's report and the court ordered that the deposition would be accepted as the report and the testimony of the expert on the stand would be confined to the observations and conclusions contained in the deposition (p. 5 pretrial transcript).

(The plaintiff's expert was permitted to file a later report which was consistent with his deposition).

At trial plaintiff introduced testimony that decedent, alone in his car, left home at 8:00 o'clock P.M. to drive from Monessen to Philadelphia. The car was about one year old and had been driven about 7000 miles. The car, going east left the east bound lanes, crossed the medial barrier or hump, went into the west bound lanes and was hit by a west bound car. As the Ford crossed the medial barrier or hump a witness coming west saw a side view of it and testified that the wheels were "straight." It was raining. The Ford had come around a slight curve to the right on a "tar" surface containing a slight dip in the road.

Following the accident the Ford car was taken to a garage presumably by a tow truck and from there to a junk yard some 18 miles away by a tow truck. It was there that an investigator found it and had the ball joint assembly cut off the front end of the car. He had never examined the ball joints before the accident or before the car was found in the junk yard. Neither had the expert ever seen the ball joints until they were brought to his attention by the investigator. (At that time the grease seals were apparently intact. They apparently became ruptured during examinations of the ball joints conducted by some one).

The expert admitted he could not come to any conclusion that the ball joints were operating improperly on the car from his examination of them (p. 174) and had still (while testifying) not formed such an opinion (p. 176). He admitted that the part had been damaged in the accident which allowed more motion of the ball joint then normal (p. 179) and that it was impossible to give the joint a functional test (p. 180). This testimony was consistent with his deposition (see discussion at p. 193).

The expert admitted that he did not know when the grease seals were broken, or whether they were broken by the impact (p. 234) and if in fact the lubricant had leaked out of the joints and caused excessive wear or burring he didn't know when this took place (p. 234).

 In view of all the testimony we failed to find any rational opinion that at the time the car was manufactured or sold it was in a defective condition and unreasonably dangerous to the consumer, or that the car reached the consumer without substantial change in the condition in which it was sold, or that any defective condition whatever caused the injury.

As to Baron Ford and Paul Baron who were charged with negligence we heard no expert opinion directed toward them. There was no rational opinion that they had neglected any duties of maintenance or that they were negligent for any other reason. We granted motions for directed verdicts stating our reasons at page 272 of the record.

Only one assignment of error has been argued which is that we refused to allow plaintiff's expert to answer a hypotheti-

cal question found at page 212 of the record. We will not set forth the entire question here. It attempted to phrase the conditions under which the accident happened and asked the expert to say whether on the basis of those facts the steering was then in an operable condition. The question omitted many factors and objection to it was sustained. The answer to this question would not have solved plaintiff's problem in any event. The question was not whether the steering was in an operable condition (a broad subject) but whether the defect in the ball joints existed at the time of manufacture or sale. The expert had adopted the theory already referred to. He had admitted repeatedly, both in his report and on the stand, that he did not know when the grease seals had broken, when the lubrication had escaped, if in fact it had all escaped or when the so-called burring or wearing had developed. In our opinion we were lenient with plaintiff in allowing him to attempt to prove his case but there was not sufficient evidence to present to a jury without permitting rank speculation. It must be remembered that the car was a year old and had been driven 7000 miles and the plaintiff had been restricted to his deposition and his report.

Plaintiff relies on the case of MacDougall v. Ford Motor Co., 214 Pa.Super. 384, 257 A.2d 676 (1969). The difficulty is that in *MacDougall* there was testimony that the steering would not function in a new car which had been driven 143 miles. That court said "when machinery malfunctions it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty the 'sin' is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery."

As previously pointed out we had no evidence of malfunction and the reasons for decedent's leaving the road are limited only by the imagination.

We have carefully examined the record and find no error.