# WILMA C. JENSEN, Ind. etc. *v.* AMERICAN MOTORS CORPORATION, INC. et al.

[No. 283, September Term, 1981.]

*Decided December 3, 1981.*

The cause was argued before GILBERT, C. J., and MOORE and MACDANIEL, JJ.

*Charles E. Bradford,* with whom was *J. Wilmer Cronin* on the brief, for appellants.

*Robert E. Powell,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

In this automobile products liability case arising out of a one-car, roll-over type accident which resulted in the death of a youthful passenger and injuries to the driver, we are asked to rule that the Circuit Court for Harford County (Cameron, J.) erroneously granted summary judgment for the manufacturer of the vehicle. There was, by appellants' admission, no direct evidence of any specific defect. In our view, the pleadings, affidavits, answers to interrogatories and replies to requests for admission of fact showed no circumstances from which an inference of a defect might reasonably be drawn. We shall, therefore, affirm.

I

The facts surrounding the death of Robert Teate, and the injuries sustained by his brother, Samuel, are essentially the following, as gleaned from the record: On October 23, 1976, at about 7:30 a.m., the two boys went with their cousin, Scott Lyle Brown, from Aberdeen to Blackwater State Park near Cambridge, Maryland, to look for suitable hunting sites. Robert was fourteen and Samuel seventeen. They rode in a 1976 Custom Jeep, manufactured by the American Motors Corporation (AMC), appellee. Lyle's parents, Roy and Iris Brown, had purchased the vehicle new the previous January. The odometer showed slightly in excess of 10,000 miles.

Samuel and Scott shared the driving on the outbound journey. Samuel was familiar with the Jeep. He had driven it over back roads and had taken his driver's test in it two or three months earlier. In a deposition, Samuel testified that while he was at the wheel, proceeding along Maryland Route 213, the Jeep "swerved to the left a couple of times" and that on one occasion, he stopped and checked it. He found nothing wrong. With reference to the swerving he testified: "It was more we got into a rut it felt like, but I really couldn't be sure."

The trio left Blackwater in mid-afternoon for the two hour or so ride back to Aberdeen. Samuel drove. The weather was clear and the road was dry. Samuel testified that he had not consumed any alcoholic beverages or drugs and that his speed was about fifty-five miles per hour as he drove westerly on Route 40.

Just prior to the accident which occurred at about 4:30 p.m., he remembered "hearing the tires squealing. It sounded like it came from the left side." He testified: "I remember trying to bring it under control. That is about it. After that, I don't remember anything." He had no recollection of any actions taken by him to bring the vehicle under control. It rolled over three or four times, ejecting its occupants, but never left the roadway itself. Robert was killed and Samuel injured. Samuel did not know whether the Jeep moved left or right but was told by an investigating officer that it went four inches into the grass median on the left.

The wrecked vehicle was subsequently moved to the front yard of Roy and Iris Brown where it remained for at least six months. During that time, approximately two months after the accident, the Browns received a recall notice from American Motors Sales Corporation which stated in part:

"On some of the subject vehicles the bolts that secure the steering gear and bracket to the frame may lose their torque."

The vehicle was ultimately sold as junk. Prior to its disposal,

no one inspected or tested the Jeep on appellants' behalf. Inspectors for the appellees submitted an affidavit that they "found no defect in steering gear or running gear of this vehicle to cause loss of control of the vehicle." They did find some play and a noise in the steering gear which they attributed to the accident. A district manager for American Motors Sales also submitted an affidavit that "the bolts securing the steering gear and bracket to the frame of the vehicle were fully torqued and intact."

Wilma C. Jensen, appellant, mother of Samuel and Robert, sued the Browns as owners of the Jeep and AMC as the manufacturer. The declaration alleged a defect in the steering mechanism and sought damages in the sum of $500,000 on three theories: negligence, breach of warranty and strict liability.

The Browns and AMC filed motions for summary judgment. The lower court, at the conclusion of the hearing on the motions, observed that the Browns' motion "depends on their having knowledge of the defect"; and that the motion of AMC "depends on the existence of the defect." The court found no evidence that the steering mechanism was defective and granted the motions. Only the summary judgment for AMC has been appealed. Appellants' brief states at the outset:

> "The Appellants do not have direct evidence per se of any specific defective part in the steering mechanism. The Appellants rely upon the circumstantial evidence presented above which logically leads to the conclusion that the steering mechanism was defective."

## II

"The bare fact that an accident happens to a product . . . is usually not sufficient proof that it was in any way defective. . . . On the other hand, the addition of very little more in the way of other facts, . . . may be enough to support the

inference. . . ." Prosser, *The Fall of the Citadel,* 50 Minn.L.Rev. 791, 840-44 (1966).

In this case, appellants had the burden, under all three theories of appellee's liability, to present evidence of a defect in the 1976 AMC Jeep and to show that such defect was the proximate cause of the accident. *Phipps v. General Motors Corporation,* 278 Md. 337, 363 A.2d 955 (1976); *Woolley v. Uebelhor,* 239 Md. 318, 211 A.2d 302 (1965); *Braun v. Ford Motor Company,* 32 Md. App. 545, 363 A.2d 562 (1962). Conceding the total absence of direct evidence, they contend that a defect was shown by circumstantial evidence — that the undisputed facts give rise to an inference of a defect in the steering mechanism. To this AMC responds that, while a defect may be shown by circumstantial evidence, the facts here do not raise an inference that the cause of the unfortunate accident was a defect in the vehicle.

The first question presented is, of course, the propriety of summary judgment in this case: was there a "genuine dispute as to any material fact" under Maryland Rule 610? *Wood v. Palmer Ford, Inc.,* 47 Md. App. 692, 425 A.2d 671 (1981). We think the trial court properly found there was not.[1] The plaintiffs' version of what occurred on the afternoon of October 23, 1976 was fully set forth in the deposition of Samuel Teate, summarized above. The basis for their claim of liability — that the vehicle had a defective steering mechanism — was fully developed in the answers to Interrogatories propounded by the Browns. That the appellants failed to have any inspection made of the vehicle after

---

1. The summary judgment proceeding seems to provoke as much litigation as it settles. Most often the problem focuses on what constitutes a genuine dispute of a material fact — the adjectives are the qualitative culprits. However, *Di Grazia v. County Executive for Montgomery County,* after reviewing the standards, stated that a murky conclusion based on a hazy inference drawn from a fuzzy suspicion is not a dispute of a material fact sufficient to defeat a motion for summary judgment. Di Grazia v. County Executive, 43 Md. App. 580, 586, 406 A.2d 660 (1979), *rev'd,* 288 Md. 437 (1980). In this case, Judge Cameron stated at the hearing on the motion for summary judgment: "The case is now in a posture where a jury would be called upon to speculate as to what the basis, if any, [of] the Defendants' liability might be. The Plaintiffs . . . are asking the trier of fact to speculate that just because there was an accident, there must have been something wrong with the vehicle; . . . ."

the accident or after the date of the recall notice, was established by their responses to requests for admission of facts; as was the fact that up to the date of the accident, "the vehicle in every respect performed well and appeared to be in good operating condition."

There was thus no disagreement between the parties on the material facts concerning AMC's alleged liability: their differences involved only the question of whether there was a reasonably permissible inference from the facts that the Jeep was defective and that the defect was the proximate cause of the casualty. In our view, the claimed inference was not legitimate. It was therefore appropriate for the lower court to determine the question of liability as a matter of law. Summary judgment — rather than an extended trial — was the proper course. *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 265 A.2d 256 (1970); *see Berkey v. Delia,* 41 Md. App. 47, 395 A.2d 1189 (1978), *aff'd,* 287 Md. 302, 413 A.2d 170, 171 (1980).

With respect to the applicable substantive law, Maryland stands with those jurisdictions which impose "strict liability" upon a car manufacturer for defects in design or manufacture existing at the time a vehicle leaves the manufacturer's control. *Phipps v. General Motors Corporation, supra;* Restatement (Second) of Torts § 402 A (1965). Judge Eldridge wrote for the Court of Appeals in *Phipps* that, although the plaintiff need not prove any specific act of negligence,

"... [T]he seller is not an insurer, as absolute liability is not imposed on the seller for any injury resulting from the use of his product. (Citations omitted.) *Proof of a defect in the product at the time it leaves the control of the seller* implies fault on the part of the seller sufficient to justify imposing liability for injuries caused by the product. Where the seller supplies a defective and unreasonably dangerous product, the seller or someone employed by him has been at fault in designing or constructing the product." (Emphasis added.)

*Id.* at 352.

Proof of a defect must arise above surmise, conjecture or speculation, *Woolley v. Uebelhor, supra,* 239 Md. at 325; and one's right to recovery may not rest on any presumption from the happening of an accident. *Brehm v. Lorenz,* 206 Md. 500, 112 A.2d 475 (1955). *Res ipsa loquitur* does not apply.[2]

The appellants ask us to consider cases in New Jersey, *Moraco v. Ford Motor Company,* 332 A.2d 607 (1974), *Henningsen v. Bloomfield,* 161 A.2d 69 (1960), as well as a decision of the Supreme Court of Oregon, *Brownell v. White Motor Corporation,* 490 P.2d 184 (1971), where injured plaintiffs were permitted to rely upon an inference that the accidents were caused by some defect. Appellants' reliance upon these authorities is altogether misplaced.

In contrast to the facts in the instant appeal, the plaintiff in *Moraca* heard a "gink" in the front of the vehicle and the wheels felt as if they had "locked." Two experts were also presented on behalf of the plaintiff and experts on behalf of the Motor Company conceded that if the power steering system lost oil, an audible noise would result.

In the earlier New Jersey case, *Henningsen v. Bloomfield,* the accident had occurred only ten days after the vehicle was purchased and it had been driven fewer than 500 miles. An independent witness testified concerning the sudden erratic behavior of the vehicle and the plaintiff produced expert testimony that something went "wrong from the steering wheel down to the front wheels." In addition, the plaintiff testified that she had the sensation that something cracked and then the steering wheel spun in her hands. Similarly, in *Brownell v. White Motor Corporation, supra,* the opinion of

---

**2.** The doctrine, when applicable, merely asserts a rebuttable conclusion deduced from known and obvious premises. Benedick v. Potts, 88 Md. 52, 58, 40 A. 1067 (1898). "There is, therefore, a difference between inferring as a conclusion of fact *what* it was that did the injury; and inferring from a known or proven act occasioning the injury that there was negligence in the act that did produce the injury. To the first category the maxim *res ipsa loquitur* has no application; it is confined, when applicable at all, solely to the second." *Id.* at 56. This Court discoursed at length on the doctrine in *C. & P. Telephone Co. v. Hicks,* 25 Md. App. 503, 337 A.2d 744, *cert. denied,* 275 Md. 750 (1975).

the Oregon Court discloses that the vehicle involved was only three weeks old and the driver deposed that he heard a loud bang. Also a wheel came off an axle. The lower court denied a motion for directed verdict. The Supreme Court, equally divided, affirmed.

The above cases and others in which circumstantial evidence has been held sufficient to permit an inference of a defect in an automobile mechanism, *see generally,* Strict Products Liability — Proof of Defect, 51 A.L.R. 3d,[3] are based on distinct circumstances described by the witnesses as well as expert testimony. The latter includes references to specific unusual behavior of the vehicle.

In this case there is a complete absence of essential facts from which an inference of a defect may reasonably be drawn. The driver, Samuel Teate, heard a squeal in the tires and lost control. There was no testimony that the steering mechanism locked or failed nor that the vehicle behaved erratically. No one on behalf of the appellants made any determination as to whether there was any looseness in the bolts that secured the steering gear to the frame, despite the fact that the damaged vehicle was available to the appellants for such inspection over an extended period of time; and this was not a situation where the vehicle was so damaged that discovery of a defect was impossible. *Cf., Brown v.*

---

**3.** 51 A.L.R. 3d 31 (1973). § 5 [a] Steering mechanism, evidence held sufficient. Bollmeier v. Ford Motor Co., 256 N.E.2d 212 (Ill. App., 1970) (car had previous history of steering trouble, failed to turn on curve, and exhibited vibration); MacDougall v. Ford Motor Co., 257´ A.2d 676 (Pa.Super., 1969) (erratic steering, specified mechanical defects found by expert); Holmquist v. Volkswagen of America, Inc., 261 N.W.2d 516 (Iowa App., 1977) (steering locked, prior hard steering accompanied by grating noises and relevant recall letter); and Gordon v. General Motors Corporation, 323 So.2d 496 (La.App., 1975) (defect in lower left ball joint assembly caused loss of control). § 5 [b] Evidence held not sufficient. McDonald v. Ford Motor Co., 326 N.E.2d 252 (Ohio, 1975) (steering column fell away before impact-required by safety regulations); Moerer v. Ford Motor Co., 129 Cal. Rptr. 112 (Cal. App., 1976) (proof that left tie rod broke failed to show defect existed at time of sale); Finnie v. Ford Motor Co., 331 F.Supp. 321 (D.C.Pa., 1971) (expert testimony inconclusive to show defect in steering mechanism). Belleville National Savings Bank v. General Motors Corporation, 313 N.E.2d 631 (Ill. App., 1974) (multiple inspections and tests revealed no flaw or malfunction). *See also,* Scanlon v. General Motors Corporation, 326 A.2d 673 (N.J., 1974) (plaintiff failed to show defect in control of defendants).

*Ford Motor Co.,* 287 F.Supp. 906 (D.D.C., 1968) (no attempt to examine vehicle for defects; summary judgment proper). There is nothing here to show the slightest connection between the squealing of tires and the alleged defect in the vehicle's steering mechanism.

Appellants' reliance on *Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc.,* 273 Md. 592, 332 A.2d 1 (1975), is also misplaced. Although they assert in their brief, citing *Giant Food,* that "bottles which are manufactured properly do not explode," they overlook Judge Levine's clear holding:

> "*Here, as we have indicated, there is no evidence permitting an inference of a manufacturing defect.* Nor does the testimony permit an inference that thermal shock during the period of time in which the bottler controlled the bottles caused the explosion. Finally, as we said earlier in quoting from the decision of the Court of Special Appeals, the evidence does support the inference that 'because the opportunities for mishandling by the retailer were considerably more extensive than those of the bottler, there was a greater likelihood that [the customer's] injuries were caused by the negligence of the retailer than by any cause within the control of the bottler.'" (Citation omitted.) (Emphasis added.)

*Id.* at 601-2

Regardless of the recovery theory, the plaintiff in product litigation must satisfy three basics from an evidentiary standpoint: 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury. *See* Digges, *Product Liability in Maryland Revisited,* 7 U.Blt.L.Rev. 1 (1978). Appellants here have satisfied none of the above. They have been unable to show that what might possibly have happened did probably happen. Reduced to its simplest form, their argument is that because a one-car accident happened without apparent cause, the manufacturer must be to blame. Such a

theory is not supported by established principles of common-law negligence or strict liability or breach of warranty. It is simply wishful thinking.

*Judgment affirmed; costs to be paid by appellants.*