Arlene **TAUBER, et al., Plaintiffs,**

v.

**NISSAN MOTOR CORPORATION, USA, Defendant.**

Civ. A. No. R–86–3287.

United States District Court, D. Maryland.

Sept. 28, 1987.

Raymond M. Hertz, Lisa S. Segel, Silver Spring, Md., for plaintiffs.

Joel A. Dewey, Andrew Gendron, Piper & Marbury, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Before the Court is defendant Nissan Motor Corporation in U.S.A.'s (Nissan) motion for summary judgment. No hearing being necessary, this Court now rules pursuant to Local Rule 6(G) (D.Md.1987).

In September, 1986, plaintiff Arlene Tauber brought suit in the Circuit Court for Howard County, Maryland. She alleged claims in negligence, breach of express warranty, breach of implied warranties, and strict product liability in tort. Upon petition by Nissan the case was removed to the federal court, pursuant to 28 U.S.C. § 1441. Following a period of thorough discovery, Nissan filed this motion for summary judgment, which has been fully briefed and responded to.

### Facts

On September 17, 1983, plaintiffs were in the front seat of a 1983 Datsun Stanza stopped for a traffic signal in the left turn lane of westbound Maryland Route 198 at U.S. Route 29. A vehicle driven by Kathy Ann Ballenger then rearended theirs. The impact of the collision threw Arlene Tauber first forward and then backward. As a result, the seat in which she was sitting collapsed backwards. Plaintiffs allege the seat "lacked sufficient strength to retain its upright position during a low-velocity impact from the rear." Plaintiff Arlene Tauber claims that as a result of the alleged defect she suffered injuries beyond those which could be attributed to the force of impact alone.

Defendant denies the seat was defective. Nissan cites testimony from plaintiffs and plaintiffs' expert witnesses in support of its claim. For example, Haim Reizes, plaintiffs' safety engineering expert, stated that he had examined the seatback mechanism both visually and manually but detected no mechanical defects. And plaintiffs' conduct following the collision, Nissan implies, casts doubt on the argument the seat is defective. After the accident plaintiffs made no mention of a problem with the seat, and did not request it be repaired, although almost $1,700 of other repairs were made to the car. Further, plaintiffs continued to drive the car with the seat unchanged, putting over 28,000 additional miles on the vehicle. Nissan, in brief, contends there is no defect in the design, manufacture, assembly, or marketing of the seat.

In reply, plaintiffs concede that there does not appear to be any defect in the "workmanship, the assembly, and other facets of the seat." But plaintiffs argue that the seat was defective in that it adhered to Federal Motor Vehicle Safety Standard No. 207 regarding seats and seat backs. This standard, plaintiffs argue, is inadequate in that it is not applicable to "real life situations as would be experienced by a seat occupant during a mild impact." In essence plaintiffs aver that an ordinary consumer would not contemplate the seat might collapse after a mild impact, and allege that Nissan was negligent in not anticipating Consumer behavior and in not designing the seat to withstand greater impact.

### Standards for Summary Judgment

Summary judgment shall be granted only if it appears that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. All evidence shall be viewed in the light most favorable to the plaintiff. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). But the plaintiff must meet her burden of proof by showing more than the existence of a scintilla of evidence; she must produce sufficient evidence for a reasonable jury to find in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This standard "mirrors the standard for a directed verdict." *Id.* The plaintiff has the burden of producing evidence that would support a jury verdict, "even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* at —— ——, 106 S.Ct. at 2514–15. Once the defendant has pointed out the absence of an essential element of plain-

tiff's case, the burden is on the plaintiff to make a sufficient showing to create a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986).

### Product Liability Cases

Plaintiff pleads facts giving rise to a distinct problem in products liability, but one with a well developed body of law. The problem is relatively straightforward. It concerns a product that has neither a construction nor assembly defect causing an accident which injures someone. Instead the product performs as it is designed to do, seemingly without flaw. Then an accident occurs, which the product has not caused, yet someone is injured, often from being thrown by the force of the impact into the product. The argument is made that the injuries suffered were "enhanced," or greater than attributable merely to the accident, because of a defective design of the product. When liability is found, it is on the theory that, since accidents are a foreseeable occurrence, the product is unreasonably dangerous due to a defective design that does not minimize the risk of injuries. Such incidents are known variously as "second accident," "enhanced injury," or "crash-worthiness" cases.

One line of cases refused to apply the theory to automobile crashes. Here the lead case was *Evans v. General Motors Corporation,* 359 F.2d 822 (7th Cir.1966). The Court found a manufacturer was not under a duty to make his automobile accident-proof, or even "more" safe in the face of an obvious danger, reasoning:

> The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobile may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons.

*Id.* at 825. The Court, opined it "would be desirable to require manufacturers to con-struct" safer cars, "but that would be a legislative function, not an aspect of judicial interpretation of existing law." *Id.* at 824. The case has since been overruled, *Huff v. White Motor Corp.,* 565 F.2d 104 (7th Cir.1977), but appears to have a lingering vitality in a few jurisdictions.

Today's majority rule takes the opposite view and derives from *Larsen v. General Motors Corporation,* 391 F.2d 495 (8th Cir. 1968). There the plaintiff alleged that "because of the design [of the steering column] he received injuries he would not have otherwise received or, in the alternative, his injuries would not have been as severe." *Id.* at 497. The defendant countered that it had no duty to design a vehicle "which is otherwise 'safe' or 'safer' to occupy during collision[s]." *Id.* The Court started with the principle a "manufacturer's duty ... extends to producing a product that is reasonably fit for its intended use," and concluded "the issue narrows on the proper interpretation of 'intended use' " *Id.* at 501. Observing that an automobile's intended use commonly led to accidents, the Court said:

> The manufacturer should not be heard to say that it does not intend its product to be involved in any accident when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident.... It should be recognized that the environment in which a product is used must be taken into consideration by the manufacturer.
>
> .... Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by the failure to exercise reasonable care in the design. These injuries, are readily foreseeable as an incident to the normal and expected use of an automobile.

*Id.* at 502. The court concluded that an automobile should not just "provide a means of transportation," but also a "means of safe transportation or as safe as is reasonably possible under the present state of the art." *Id.*

*Larsen* is notable for its analysis of the duty of care:

> This duty of reasonable care in design rests on common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury. The duty of reasonable care in designs should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many common-sense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here.

*Id.* at 503. There thus was a duty to inspect and test for designs that would cause an unreasonable risk of foreseeable injury. *Id.* at 505.

Maryland law follows *Larsen* in allowing a cause of action for a product being unreasonably dangerous due to a defective design. Judge Eldridge found the theory valid for a negligence products liability case in *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 321 A.2d 737 (1974). He found it valid in a breach of implied and express warranties case in *Frericks v. General Motors Corporation*, 274 Md. 288, 336 A.2d 118 (1975). And he extended it to strict products liability cases in *Phipps v. General Motors Corporation*, 278 Md. 337, 363 A.2d 955 (1976). Judge Eldridge wrote,

> [T]he seller is not an insurer, as absolute liability is not imposed on the seller for any injury resulting from the use of his product. [Citations omitted.] Proof of a defect in the product at the time it leaves the control of the seller implies fault on the part of the seller sufficient to justify imposing liability for injuries caused by the product. Where the seller supplies a defective and unreasonably dangerous product, the seller or someone employed by him has been at fault in designing or constructing the product.

*Phipps*, 278 Md. at 352, 363 A.2d at 963. While the language employed with each recovery theory varies, it is now clear that the test in all 3 is the same: the plaintiff must show 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury. *Jensen v. American Motors*, 50 Md.App. 226, 234, 437 A.2d 242, 247 (1981).

### Analysis

For the purposes of deciding this motion for summary judgment, the Court assumes without deciding that the accident occurred as plaintiff states and that there is a causal relationship between the accident and her injuries. The focus, therefore, will be on whether plaintiff has shown there is a defect in the product. The Court is mindful of the fact that in tort cases "Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury." *Fowler v. Smith*, 240 Md. 240, 246, 213 A.2d 549, 554 (1965). The question for the Court, therefore, is whether there is any legally sufficient evidence such that the case should be presented to a jury.

The question of what constitutes legally sufficient evidence is best approached on a case by case basis with careful attention paid to the particular facts and circumstances. There is authority to the effect that "injury, of itself, is not proof of a defect and raises no presumption of defectiveness." *Gates v. Ford Motor Co.*, 494 F.2d 458, 459 (10th Cir.1974). Maryland courts have followed the same rule, stating, "Proof of a defect must arise above surmise, conjecture or speculation ..., and one's right to recovery may not rest on any presumption from the happening of an accident." *Jensen v. American Motors Corp., Inc.*, 50 Md.App. 226, 232, 437 A.2d 242, 245 (1981). The same court noted that in cases where "circumstantial evidence has been held sufficient to permit an inference of a defect in an automobile mechanism," the outcomes are "based on distinct circumstances described by the witnesses as well

as expert testimony." *Id.* at 233, 437 A.2d at 246.

Plaintiff's burden, therefore, in Maryland is to show something beyond the mere fact of an accident. This burden is in contrast to the severe burden of *Huddell v. Levin,* 537 F.2d 726 (3d Cir.1976). There the court held the plaintiff must establish 1) an alternative, safer design; 2) proof of what injuries, if any, would have resulted had the alternative, safer design been used; and 3) some method of establishing the enhanced injuries attributable to the defective design. *Id.* at 737–38. The Maryland courts thus decline to place a nearly impossible burden on plaintiffs, yet still require a measure of proof that the defendant breached his duty of reasonable care.

The Court does not find that plaintiff Tauber met her burden of proof. She produced proof that the seat collapsed backward. But as noted mere proof of an accident does not establish a defect. Plaintiff's own testimony shows that she did not seek to have any repairs made to the seat; and indeed she continued to use the seat in the same condition, putting many thousands of miles on the car. Plaintiff's own expert examined the seat and found no defects in its mechanical condition.

Plaintiff's expert does opine that the design is defective in that it conforms to the National Traffic Safety Standard for seats, a standard he argues is unrealistic in light of real life impacts. But the argument is presented in vague, conclusory fashion, without any specific factual analysis to support it. At best plaintiff's expert's argument establishes that defendant complied with the only applicable safety standard and requests the Court find that compliance to be evidence of negligence. The Court is aware that Congress did not intend compliance with the National Traffic and Motor Vehicle Safety Act to exempt manufacturers from common law liability. *Larsen,* 391 F.2d at 506; *Volkswagen of America v. Young,* 272 Md. at 218, 321 A.2d at 746. However, the Court would feel compelled to admit evidence of compliance with federal standards, while not conclusory, as evidence tending to establish that defendant complied with the duty of reasonable care. Plaintiff's expert has not provided any credible basis for characterizing the seat as defective in the general context of motor vehicle accidents.

In sum, in this case, where the plaintiff has merely produced evidence that the seat fell backward, without any mechanical defect, and with no credible evidence of a design defect, the Court cannot find that plaintiff met her burden of producing some evidence legally sufficient to show a defective product.

Accordingly, for the reasons stated herein, it is this 28th day of September, 1987, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment is GRANTED; and,

2. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.