Mark S. STALNAKER, et al.

v.

GENERAL MOTORS CORPORATION.

Civil No. S 95–1455.

United States District Court,
D. Maryland.

Aug. 15, 1996.

Melvin G. Bergman, Joseph F. Gaffigan, Gaffigan & Zitver, Beltsville, MD, for Plaintiffs.

H. Bruce Dorsey, Piper & Marbury, Baltimore, MD, for Defendant.

*MEMORANDUM OPINION*

SMALKIN, District Judge.

This case, a diversity products-liability case, is before the Court on the defendant's motion for summary judgment, which has been fully briefed. No oral hearing is necessary. Local Rule 105.6, D.Md.

This suit is brought on behalf of a deceased child, Jennifer Stalnaker, one of three individuals who died in a two-car crash on Route 50 near Cambridge, Maryland, a little more than two years ago. The deceased youngster, who was nine years old, was occupying the right rear passenger seat of a 1989 General Motors Cadillac DeVille being driven by her grandmother. The Cadillac was tragically struck by a Buick whose driver had lost control. The decedent was dead on arrival at Dorchester General Hospital. She died from tracheal occlusion caused by regurgitation of her stomach contents. She was also determined to have had a lacerated liver and spleen, multiple fractured ribs, and severe bruises across her abdomen, but none on her neck or shoulder. The present suit claims that General Motors failed properly to warn on correct use of the rear seat belt and that there was a "performance failure of the entire seat belt system."

The defendant is clearly entitled to prevail on this record as a matter of law under Fed.R.Civ.P. 56(c), as interpreted in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is settled that, under Maryland law, there is no products liability recovery at all unless the plaintiff proves the existence of a defect, that the defect is attributable to the seller, and that there is a causal relationship between the defect and the injury. *See Jensen v. American Motors Corp.,* 50 Md.App. 226, 234, 437 A.2d 242 (1981). The first element—existence of a defect—may be proved by competent evidence of something wrong with the manufacture of the product, the design of the product, or a lack of adequate warnings on the proper use, which caused the injury. *See Simpson v. Standard Container Co.,* 72 Md.App. 199, 203, 527 A.2d 1337 (1987). There can be no products liability recovery in Maryland simply on the *post hoc* conclusion that the mere happening of the accident shows the existence of a defective product. *Jensen,* 50 Md.App. at 234–35, 437 A.2d 242.

In this case, the plaintiffs have effectively abandoned their claim that the seat belt mechanism was defective in design.

Turning to the remaining possible sources of defect, there is no evidence sufficient to generate a triable dispute under *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), that there was either a defect in the manufacture of the mechanism or a lack of adequate warning on its proper use, causing the injury. The testimony of Dr. James Pugh, who claims to have observed a misalignment of the gears of the retractor for the shoulder and lap belts, is entirely too speculative to justify any reasonable jury in the existence of a manufacturing defect by a preponderance of the evidence. For example, Dr. Pugh did not check the alignment of the mechanism against design drawings to see if it was within specifications. His evidence is plainly insufficient to generate a triable dispute that the mechanism was defectively manufactured under *Anderson* and *Celotex.*

With regard to the question of warnings on the proper use of the seat belt, there is also plainly insufficient evidence upon which a trier of fact could possibly conclude that Jennifer was wearing both the lap and shoulder portions of the belt, in the proper manner. There is some slight speculation—some of it expressly denominated as such by the witnesses—that she might have "slipped out" of the shoulder portion of the belt, but the evidence that she was wearing only the lap portion of the belt is so overwhelming that no reasonable jury could possibly conclude otherwise. *See Anderson, supra.*

Not only is there evidence that Jennifer suffered bruising consistent only with wearing the lap belt, there is also evidence that she habitually wore only the lap belt, without the shoulder belt properly placed. *All* of the witnesses observed that the shoulder belt was not across her at the time of the wreck, but was in back of her. There is *no* evidence, as distinguished from speculation, that the deceased child was wearing the seat belt in the proper manner, *viz.,* with the shoulder portion across her torso. Under these circumstances, and given that the decedent was said—without dissent—to have known of the need to wear the shoulder belt properly across her torso and that her failure to do so was a misuse of the belt, there can

be no recovery. *See Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 596–98, 495 A.2d 348 (1985). Under *Ellsworth*, 303 Md. at 597, 495 A.2d 348, misuse is not a defense, but is the absence of proof by plaintiff of a required element for product liability recovery. Furthermore, there is no indication that the deceased or anyone associated with her ever read the warnings that were in fact provided by the defendant. *Cf. Ellsworth*, 303 Md. at 598 n. 12, 495 A.2d 348.

■ Finally, the Court agrees with the defendant that the plaintiff's expert witnesses do not present sufficient evidence from which a jury could reasonably conclude that there was a defect in the product, and that the so-called "skip-lock" theory is indeed a theory that is "scientific," in the sense that it relies on basic principles of physics and mechanics. Yet, it is in itself obviously so far afield from any recognized scientific principle to be completely inadmissible under the current standard for admissibility of expert testimony, as established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

For the reasons stated, an Order will be entered separately, granting the defendant's motion for summary judgment.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is, this 15th day of August, 1996, by the Court, ORDERED and ADJUDGED:

1. That the defendant's motion for summary judgment BE, and it hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of the defendant, and against the plaintiffs, with costs.