433 So.2d 354 (1983)
Mildredge BROUSSARD, Plaintiff-Appellant,
v.
CONTINENTAL OIL COMPANY, et al., Defendants-Appellees.
No. 83-25.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
Rehearing Denied July 14, 1983.
Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Lake Charles, for defendants-appellees.
Before GUIDRY, STOKER and LABORDE, JJ.
STOKER, Judge.
This is a personal injury suit by Mildredge T. Broussard against Black & Decker (U.S.), Inc. and The Home Insurance Company. Plaintiff-appellant (Broussard) was badly burned in an explosion of natural gas sparked by a Black & Decker hand drill. Broussard was using the drill while working at a Continental Oil Company (Conoco) plant at Grand Chenier, Louisiana. Plaintiff also sued Conoco and its plant supervisor but reached a settlement agreement with those defendants before trial. Other parties to the suit settled with the plaintiff before trial. American Mutual Insurance Company, an intervening party represented at trial, does not appeal that portion of the judgment adverse to it, and the judgment as to it is now final.
The verdict of the jury at trial was that Black & Decker was not at fault for failure to adequately warn in connection with the accident. Judgment was for the defendants and against plaintiff and the non-appealing *355 intervenor. The issues on appeal are:
I. Did the jury commit manifest error in not finding Black & Decker at fault for failure to adequately warn plaintiff of the hazard to which he was exposed in using the drill near vaporous gas?
II. Did the trial court err in (1) submitting to the jury a negligence charge in a products liability case, (2) in submitting to the jury the question of whether or not Conoco was negligent, and (3) in submitting the question of whether plaintiff was negligent to the jury?
We find no error in the jury's verdict and find no error relative to the jury submission questions. We affirm.

BACKGROUND FACTS
Plaintiff was directly employed by Crain Brothers Construction Company, and the trial court found he was the statutory employee of Conoco. On the day of the accident, plaintiff and four other men, including Sanders Miller, were in the process of building a sump box enclosure at the end of a natural gas vent line (pipe) at the Grand Chenier plant. Plaintiff was a carpenter's helper and Miller was a carpenter. Upon arriving at the site, both men noticed that natural gas could be heard and smelled coming from the vent line. Miller immediately notified Conoco's relief plant foreman about the escaping gas and asked if it could be shut off. The foreman refused to do so because the whole plant would have had to be shut down to prevent the gas from being vented at the location of the sump box. After Miller requested a shut down a second time, the foreman talked to Mr. Leeman, another Conoco employee and the plant supervisor. Miller was again told nothing could be done.
Miller testified that he recognized the danger of working around the flammable natural gas. The workers took what precautions they could to minimize the risk of igniting the natural gas fumes. Cigarettes, cigarette lighters and matches were left in the work vehicles. The vehicles were parked some distance away from the site. A gasoline powered electricity generator was placed at the end of two 50-foot extension cords. Miller warned the plaintiff to be careful not to cause a spark while hammering, especially when the fumes were heavy.
The explosion occurred as plaintiff was standing inside a plywood box loosely held together and being constructed as a concrete form. He was positioned inside the form to drill holes in its sides through which rods were to be inserted. It is not seriously contested that sparks from the drill plaintiff was using ignited the natural gas fumes coming from the vent line. Such sparks are normally emitted from this and similar type drills when the "brushes" inside the armature of the drill contact and slide along the inside surface of the rapidly spinning cylinder in which the brushes sit. There is no evidence, nor is the issue before this Court, that the design which allows the creation and emission of these sparks constitutes a design defect. Rather, the issues relate to the failure to warn on the part of the defendant manufacturer of the hazard of explosion.
Both the plaintiff Broussard and Sanders Miller testified that they were unaware at the time of the accident that sparks from electrical power drills could ignite gaseous atmospheres. Allen Nunez, the relief foreman, likewise testified that neither he nor anyone at the Conoco plant knew of the potential of explosion in a like situation before the accident occurred. However, a warning that would have informed the users of the drill of the precise cause and effect encountered appears in the owner's manual. Black & Decker claim that a copy of this manual is placed in every box containing one of their drills as it leaves the manufacturer's control. See Appendix, Item No. 18.
The owner's manual is not attached to the drill but is loosely placed in the box. Thus, unless the box with the owner's manual inside (or the owner's manual itself, with the safety warnings inside its folded *356 pamphlet form) is kept with the drill, the warning is not available to users other than the buyer. In addition to the owner's manual warning, there is a small notice on the side of the drill which simply reads, "CAUTION: For Safe Operation See Owner's Manual." This notice is approximately one-eighth inch high and one inch long.
Sanders Miller received the drill at the office of the Crain Brothers Construction Company from the secretary who worked in the office. The secretary asked Miller if he wanted the box the drill came in. Miller replied he had no use for it, and the box was thrown away. Neither Miller nor the plaintiff saw the owner's manual.

DID BLACK & DECKER FAIL TO PROVIDE ADEQUATE WARNING?
With reference to adequacy of warning of the danger from the emission of sparks, Black & Decker contends item eighteen in the owner's manual was sufficient. Plaintiff Broussard contends that it was not. Broussard contends that Black & Decker was guilty of fault in not putting the warning on the drill itself. Item eighteen reads as follows:
"18. DO NOT OPERATE portable electric tools in gaseous or explosive atmospheres. Motors in these tools normally spark, and the sparks might ignite fumes."
The warning set forth in these words is adequate; the question is whether it was sufficient to put it in the owner's manual or whether it was unreasonable under the circumstances not to put this warning on the drill itself. As noted above there was a warning on the drill which read, "CAUTION: For Safe Operation See Owner's Manual."
We are confronted here with the application of absolute liability of a manufacturer. The product, the drill, does not contain a defect in the ordinary sense of design or manufacturing defect, but ordinary use of the drill is dangerous under the factual circumstances which were present in this case, i.e., use in the presence of natural gas fumes. Unreasonable risk is a requirement of strict liability just as it is in negligence. Entrevia v. Hood, 427 So.2d 1146 (La.1983); DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981); Cobb v. Insured Lloyds, 387 So.2d 13 (La. 1980); Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Chappuis v. Sears Roebuck & Company, 358 So.2d 926 (La.1978); Olsen v. Shell Oil Company, 365 So.2d 1285 (La. 1978) and Loescher v. Parr, 324 So.2d 441 (La.1976).
The judicial process involved in deciding whether a risk is unreasonable in strict liability is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem and in deciding the scope of duty or legal cause under the duty risk analysis. Entrevia v. Hood, supra, and Hunt v. City Stores, Inc., supra. Strict liability and negligence are not identical in all respects. A major distinction between the two theories is that the inability of a defendant to know or prevent the risk is not a defense in a strict liability case but precludes a finding of negligence. Entrevia v. Hood, supra, and the cases cited therein. Knowledge of the risk is not a problem here for Black & Decker knew of the risk. The question is what was adequate warning.
In Entrevia v. Hood, the Supreme Court said:
"The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code.

* * * * * *
"As this court has noted in relation to other forms of strict liability under the civil code, the activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations. Langlois v. Allied *357 Chemical Corporation, 258 La. 1067, 1084, 249 So.2d 133, 140 (1971).
"The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, Hunt v. City Stores Inc., 387 So.2d 585 (La.1980), and in deciding the scope of duty or legal cause under the duty risk analysis. Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Green, The Causal Relation Issue, 60 Mich.L.Rev. 543, 563 (1962). This is not because strict liability under Article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social, and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community. B. Cardozo, The Nature of the Judicial Process, at p. 105 (1921); See also, Green, The Causal Relation Issue, 60 Mich.L.Rev. 543 (1962)."
In approaching our decision in this case we accept at face value the assertions of Broussard and Sanders Miller that they were unaware that the drill in question would emit sparks when in operation. Building upon this assertion plaintiff relies heavily on the case of Chappuis v. Sears Roebuck & Company, supra, and especially the following pronouncement from that case:
"Absolute liability upon a manufacturer whose product is useful, traditional, but which might become dangerous in some circumstances must be distinguished from the obligation here involved. There may be many tools or other products which become dangerous for normal use in certain conditions. But when the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take reasonable steps to warn the user."
In Chappuis the ordinary claw hammer, the subject of that case, did have a warning label on the handle. The Louisiana Supreme Court held that the warning was not adequate to put the user on notice of the particular risk involved. The particular risk was that once the steel hammer face became chipped, it is liable to chip again when used and a flying chip might physically injure someone.
The questions before us are:
1. Was adequate warning given through the general caution on Black & Decker's drill directing users to consult the owner's manual for safe operation?
2. If the general warning was not adequate, was it unreasonable for Black & Decker not to place on the drill itself the warning contained in item 18 of its safety rules contained in the owner's manual?
These questions must be tested together as they rest on the same practical considerations.
Plaintiff's own expert witness unwittingly pointed up the difficulty in putting warnings on the drill itself. This expert demonstrated the use of warnings through symbols as opposed to words. The expert devised a series of symbols of his own creation based on international symbols which he suggested could have been placed on the drill itself. The symbols purportedly represent ten of the eighteen warnings Black & Decker set forth in the owner's manual. Plaintiff relies on Chappuis v. Sears Roebuck & Company, supra, as support of his contention that such warnings should have been placed on the drill itself.
While we think the use of symbols as suggested by plaintiff's expert merits no consideration, we note that the expert deemed at least ten of the warnings represented by the symbols were worthy of being noted on the drill. The fact that numerous risks other than sparking explosions or fires merit notice is a significant factor. The suggested use of symbols is also significant because the reason for it is the recognition that the space on the drill is not large enough to contain extensive warnings and *358 cautions in words. This factor will be discussed later, but at this point we will state our opinion relative to the efficacy symbols in lieu of words.
Plaintiff's expert testified that the symbols he proposed are neither standard nor easily recognizable by the general public. Further, the testimony indicates that the symbols are unclear and subject to different interpretations. The symbols fail in one aspect of sufficiency according to expert (as distinguished from legal) standards in that they do not inform why the activities are dangerous, just that they are dangerous. Above all, however, we are convinced that the use of symbols would require users of the drill to refer to an owner's manual or other written material to discover what the symbols meant. This would be no more efficacious than what Black & Decker did when it put a caution on the drill directing users to consult the owner's manual for safe operation.
We think counsel for plaintiff recognized lack of merit in the suggested use of symbols. On plaintiff's behalf Exhibit P-17 was introduced in evidence. On the side of this exhibit a label measuring approximately 2 5/8 inches by 1¾ inches was affixed on which the following words were typed:
 "Safety Rules
 ".Don't abuse cord
 .Wear proper apparel
 .Don't use in damp areas
 .Use proper extension cords outdoors
 .Don't touch metal parts when drilling
 near any electrical wiring
 .Remove tightening key
 .Unplug to change bits
 .Use safety glasses
 .Avoid gaseous areas
 .Secure work
SEE MANUAL FOR COMPLETE TEXTS"
The whole of the above quoted material is typed in small letter characters in a slant-wise or diagonal fashion on the label in order to fit. It will be noted that the only reference to the risk of igniting gas from emission of sparks is contained in the three words, "Avoid gaseous areas."
We are not impressed with plaintiff's Exhibit P-17. The most important failing of the exhibit is that the mere words, "Avoid gaseous areas" does not meet the test of the Chappuis case because it does not explain or point out the precise risk of injury posed by use in gaseous areas. Moreover, this exhibit graphically illustrates the problem of attempting to put multiple warnings on a hand drill of the size and nature involved.
Defendant considers that more than ten warnings should be given. Nevertheless, if only ten are selected, deficiencies in any scheme for putting them all on the drill become apparent. As a practical matter, the effect of putting at least ten warnings on the drill would decrease the effectiveness of all of the warnings. A consumer would have a tendency to read none of the warnings if the surface of the drill became cluttered with the warnings. Unless we should elevate the one hazard of sparking to premier importance above all others, we fear that an effort to tell all about each hazard is not practical either from the point of view of availability of space or of effectiveness. We decline to say that one risk is more worthy of warning than another.
With the merits and demerits of the arguments urged by the parties in mind, we now decide whether Black & Decker exposed plaintiff to unreasonable risk. We follow the interest balancing procedure discussed in the jurisprudence and most recently in Entrevia v. Hood, supra. We conclude that defendant acted reasonably toward plaintiff and all persons who might use its hand drill. In view of the numerous risks which a manufacturer of a hand drill must explicitly describe in Chappuis terms, the most practical and effective thing which the manufacturer could do is to direct the user to the owner's manual as Black & Decker did.
For the reasons we have given we hold that the jury's finding of no fault on the part of Black & Decker was correct.

*359 DID THE TRIAL COURT ERR IN ITS JURY SUBMISSION?
The plaintiff contends that the trial court confused or misled the jury through an erroneous jury charge and through submitting jury interrogatories which had the effect of suggesting to the jury that Conoco was the only party at fault. Counsel's position is ingeniously set forth and persuasively argued. Nevertheless, we need not consider it. Assuming that we were to agree that the trial court erred in the respects urged, it would avail plaintiff nothing. The only effect would be that we would be required to carry out the mandate of Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975) and decide the matter ourselves, as the record is complete. See also Broussard v. Texas Industries, Inc., 416 So.2d 1349 (La.App. 3rd Cir.1982). We have decided the case on its merits. Therefore, no useful purpose would be served in exploring the merits of the question of jury submissions.

DECREE
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by plaintiff.
AFFIRMED.