Beverly B. WILSON, Plaintiff,

v.

Joseph Patrick CLANCY, Defendant.

Civ. No. S 89–3072.

United States District Court,
D. Maryland.

Oct. 17, 1990.

William J. Murphy, Murphy & McDaniel, Baltimore, Md., for plaintiff.

Charles Martinez, Eccleston & Wolf, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a diversity case, in which the plaintiff, a disappointed testamentary beneficiary, brings a third-party malpractice suit against the attorney who drafted the 1987 Last Will and Testament of Dr. Thomas A. Hurney. The matter is before the Court on a summary judgment motion directed to be filed by the Court when it reviewed the pretrial order and questioned whether there was a triable issue in the case. (A summary judgment motion had not earlier been filed, according to defense counsel, because of a substitution of counsel well into the discovery/motions phase of the case.) The motion has been duly opposed, and no oral argument is needed.

The defendant was a longtime family friend and attorney for Dr. Hurney, the testator. In 1968, the defendant prepared wills for Dr. and Mrs. Hurney, under which, at the death of the last of them,

their property would be divided among their relatives in such a fashion that the plaintiff would, in effect, receive a one-eighth share. By 1987, the Hurneys' physical conditions had deteriorated to the extent that Mrs. Hurney was in a nursing home and Dr. Hurney, although not institutionalized, required home health care. The parties agree that Dr. Hurney engaged Mr. Clancy in 1987 to draft a new will (the 1987 will) for him (the plaintiff does not allege that Mr. Clancy was ever engaged to draft a new will for Mrs. Hurney), whereby trusts were created to take care of Mrs. Hurney following the death of Dr. Hurney and to take care of another aged relative of Dr. Hurney (his sister) until her death, should Mrs. Hurney have predeceased him. Under this new will, after the deaths of these two people, the trusts were to terminate and the residue was to be split in half between plaintiff and another relative of Dr. (but not Mrs.) Hurney. The trusts were to be funded with all of Dr. Hurney's property.

Dr. Hurney predeceased Mrs. Hurney, owning essentially no property in his own name at the time of his death, the couple's valuable assets being then held by them jointly with right of survivorship, as they had been when the 1987 will was drafted. Meanwhile, it will be remembered, Mrs. Hurney's Last Will and Testament at her death was her 1968 will, giving plaintiff a one-eighth share, not a one-half share, in her estate.

As can readily be seen, had Dr. Hurney held sole title to all the couple's valuable property at his death, Mrs. Hurney's 1968 will would have been *de facto* defunct, and plaintiff would have taken half the Hurneys' property under the Doctor's 1987 will. Unfortunately for plaintiff, as noted above, all the couple's property (except Dr. Hurney's Rolex wristwatch and a $6000 car) was held by the couple at the time of Dr. Hurney's death in a joint tenancy with the right of survivorship. Accordingly, it passed directly to Mrs. Hurney outside the Doctor's 1987 will, and, upon Mrs. Hurney's death, it passed under Mrs. Hurney's 1968 will, the net result being that plaintiff wound up with about $220,000 less than she would have, had Dr. Hurney held the couple's valuable property in his sole name at the time of his death.

■ To start its legal analysis, the Court accepts that Maryland has recognized the right of disappointed beneficiaries to sue the drafter of an allegedly deficient will, at least where the testator's clear intent to bequeath property to the plaintiff has been frustrated by the drafter's negligence. *See Layman v. Layman,* 84 Md. App. 183, 189–91, 578 A.2d 314 (1990). *See also Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985); *Kirgan v. Parks,* 60 Md.App. 1, 478 A.2d 713 (1984). As in other cases of malpractice, the plaintiff must prove deviation from the standard of care on the part of the accused attorney, which has proximately caused her an injury. In this case, the essence of plaintiff's position is that the 1987 will was *prima facie* a piece of malpractice, in that it purported to devise jointly held property, a legal impossibility.

Of course, the will does not *in haec verba* devise joint property to non-joint tenants. It is true that the will does bequeath to Mrs. Hurney, in trust, any bonds and bank accounts held jointly by the couple at the time of Dr. Hurney's death, but this language is surplusage, in that such property would have passed to Mrs. Hurney anyway free of trust at the time of Dr. Hurney's death. It certainly could be that such joint property might have been *de minimis* at the time of Dr. Hurney's death, as would have been the case had he transferred the couple's substantial jointly-held assets to his sole name before he died, as Mr. Clancy says he told Dr. Hurney to do. Of course, any language in Dr. Hurney's will purporting to bequeath jointly held property to the residuary legatees under that will at the time of Mrs. Hurney's death would have been unenforceable anyway, and nothing that Mr. Clancy could have inserted in Dr. Hurney's will could have made it otherwise. The drafter's fail-

ure to accomplish the legally impossible would obviously provide the present plaintiff with no grounds for suit against Mr. Clancy. *See Layman v. Layman, supra.* Thus, contrary to plaintiff's position, the words of the will do not themselves establish malpractice. Rather, there could be malpractice only if defendant did not realize, or advise his client of, the need to change the titling of the couple's substantial property to Dr. Hurney's sole name to bring it within his testamentary estate.

■ The defendant has testified on deposition that he realized that the jointly held property of the Hurney couple could not pass to the named residual beneficiaries under the Doctor's 1987 will, and that, accordingly, he advised Dr. Hurney repeatedly that, in order for the 1987 will to be effective in accordance with Dr. Hurney's wishes, Dr. Hurney would have to see to it that the couple's property was transferred from joint ownership to Dr. Hurney's sole ownership.

The plaintiff, now frustrated by her inability, by reason of Dr. Hurney's death, to refute this testimony directly, argues that the mere fact that Mr. Clancy delivered a will to Dr. Hurney that purported to bequeath jointly held property demonstrates malpractice. The problem with this argument is that there was nothing wrong with the wording of the will itself in this particular regard (the several alleged drafting errors found by plaintiff's expert witness going to other claimed defects not involved in this suit), nor was there anything wrong with Mr. Clancy's advice to Dr. Hurney in general, if Mr. Clancy is to be believed. In fact, plaintiff would have received the half share she now seeks had Dr. Hurney but taken the steps he assured defendant he would take to change the form of ownership of the property. Certainly, it is not malpractice for an attorney to draft a will that he or she knows will not be effective until the client takes further steps and, at the same time, to advise the client to take those steps. The defendant's deposition testimony establishes that that was just what he did.

The case of *McLane v. Russell*, 159 Ill. App.3d 429, 111 Ill.Dec. 250, 512 N.E.2d 366 (1987), cited by the plaintiff in her pre-trial order, is not to the contrary. In *McLane*, the testator wished to leave her half of a farm that she owned jointly (with right of survivorship) with her sister to the plaintiff. The testator engaged the defendant to draft a will so providing, which he did, but, of course, it would have been impossible to bring the property within the will unless either the other sister conveyed her half to the testator or the property was partitioned. There was apparently no evidence that the lawyer had ever brought this matter to the testator's attention or had advised her to have the property judicially partitioned, which would have been necessary because of the other sister's mental incompetence, well known to the lawyer, who was also the incompetent sister's guardian. In the instant case, the plaintiff herself in fact insists that the Hurneys' property could have been retitled by Dr. Hurney alone, without the consent or participation of Mrs. Hurney, which is just what Mr. Clancy told him to do. Sound advice that is not followed does not constitute malpractice.

■ The defendant, having produced evidence that he fulfilled his duty to advise Dr. Hurney to change the ownership form of the couple's property in order to effectuate the 1987 will's intent, is entitled to summary judgment unless the plaintiff can come up with some evidence to generate a triable dispute on this sole dispositive fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Unfortunately for the plaintiff, there simply is no such evidence. Plaintiff argues, citing the pre-*Anderson/Celotex* case of *Magill v. Gulf & Western Industries, Inc.*, 736 F.2d 976 (4th Cir.1984), that summary judgment is inappropriate here because the case involves questions of state of mind and credibility, which are not fit matters for summa-

ry judgment. Contrary to plaintiff's argument, the critical question here is neither Mr. Clancy's nor Dr. Hurney's state of mind, as that fact usually has relevance (*e.g.*, as to questions of motive or intent), but what Mr. Clancy told Dr. Hurney to do, which is a question of simple fact, not involving inquiry into anyone's state of mind as to motive or intent. Granted, Mr. Clancy's credibility is, in a sense, on the line, but this generates no *triable issue* unless plaintiff produces competent evidence that contradicts Mr. Clancy. In essence, plaintiff argues that it would be unfair for the defendant to be able to escape liability on the basis of his own testimony, which is irrefutable as a practical matter, because Dr. Hurney now lies in his grave. Plaintiff would like a chance to bring Mr. Clancy's credibility on this score before a jury, to convince the jury that Mr. Clancy is not telling the truth, and to establish thereby that Mr. Clancy was negligent by simply arming Dr. Hurney with the will but not with the knowledge required to make it effective.

Questions of this general sort often arise in cases where the party resisting summary judgment can muster no competent evidence to avoid it, yet wants to get to a jury in the hopes that the jury will disbelieve the evidence that the summary judgment movant has adduced. The answer to handling such a situation is found in such cases as *DF Activities Corp. v. Brown*, 851 F.2d 920, 922 (7th Cir.1988), in which the court, addressing a statute of frauds question as to whether trial was warranted after a sworn denial of the contract by the party sought to be charged, said:

> A plaintiff cannot withstand summary judgment by arguing that although in pretrial discovery he has gathered no evidence of the defendant's liability, his luck may improve at trial. [Citations omitted.]

This is precisely what plaintiff here wishes to convince the Court to do, and the Court will not do it.

■ In an attempt to stave off summary judgment, plaintiff, in her opposition to summary judgment, has found a previously undiscovered witness, a Ms. Bouman, who had done Dr. Hurney's bookkeeping and tax work in the several years before his death. Her affidavit, submitted as Ex. 18 to plaintiff's summary judgment opposition, proffers testimony to the effect that neither Mr. Clancy nor Dr. Hurney ever mentioned to her that Dr. Hurney would need to change the titling of his assets in order to make the 1987 will effective. Plaintiff argues that, from this evidence, she is entitled to the inference that such advice was never given Dr. Hurney by Mr. Clancy, and that such inference is sufficient to carry the case to a jury.

The difficulty with this argument is that, in order to be sufficient to generate a triable dispute under Rule 56(c), affidavits must contain evidence that would be admissible at trial. Fed.R.Civ.P. 56(e).

At common law, there was substantial authority that the silence of an individual or group of individuals is hearsay, as an "implied assertion." *See* cases collected and discussed in Professor Morgan's famous article, "Hearsay Dangers and the Application of the Hearsay Concept," 62 Harv.L.Rev. 177, 213 (1948). It appears to be the intent of the limitation of the hearsay definition under Fed.R.Evid. 801(a)(2) to non-verbal conduct "intended by the [declarant] as an assertion" to do away with the notion that "implied assertions" are within the hearsay prohibition. *See McCormick on Evidence* § 250 at 743 (1984). *See also* 4 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 801(a)[01] at p. 801–61 (1990). Although there appears not to be any significant case law on this topic since the adoption of the Federal Rules of Evidence, and although a case might still be made for treating silence as hearsay, the Court is of the opinion that, as the cited authorities agree, silence, at least where there is no showing of intentional silence on a particular occasion intended as an assertion when the silence was kept, is no longer within the hearsay realm.

Nevertheless, even though the evidence is not hearsay, this Court would exclude it at trial under Fed.R.Evid. 403, because the probative value of silence, unless under circumstances that compel speech, is so weak and so fraught with speculation as to its reason that it is far outweighed by the prejudicial effect of introducing such evidence. *See* Morgan, *op. cit.*, at 213 n. 74. *Cf.* 4 *Weinstein's Evidence*, ¶ 801(a)[02] at p. 801–64 (1990). In commenting on the question of silence as hearsay, McCormick notes, at pp. 742–43, that the cases at common law in which silence was excluded involved, generally, two sorts of factual situations, as follows:

> The cases are likely to fall into two classes: (1) evidence of absence of complaints from other customers as disproof of claimed defects ... and (2) evidence from members of a family that a particular member never mentioned an event, or claim to or disposition of property, to prove nonoccurrence or nonexistence.

As illustrative of this second genre of cases, the McCormick treatise cites a number of old state-court cases, the same ones noted in the 1948 Morgan article cited above. As did the Morgan article, the McCormick treatise notes that, aside from questions of hearsay, such situations are fraught with the possibility of marginal relevance warranting exclusion of the proffered silence, especially in the class of cases involving silence of a family member offered to prove nonoccurrence of an event, to which the instant case is most analogous. The treatise refers the reader to Fed.R.Evid. 403 on this issue. The few recent cases expressly treating silence under Rule 403's principles have dealt with it in the context of criminal cases or the invocation of a privilege, but even there, the courts have noticed the prejudice inherent in allowing the trier of fact to speculate as to the reason nothing was said. *See, e.g., United States v. Hale*, 422 U.S. 171, 180, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975).

Because of its very nature as the absence of any discernible action, silence on a topic in a situation such as this (where there is no specific stimulus identified calling for speech on that topic on a particular occasion) obviously starts out with a low degree of probative value, which then must be weighed against the danger of prejudice arising from allowing the trier of fact to speculate as to the reasons for that silence. Here, although Ms. Bouman gives her opinion (itself of questionable admissibility) that Dr. Hurney would have mentioned to her the need for retitling had Mr. Clancy advised him to do it, there might well have been a myriad of reasons, now unknowable, why Dr. Hurney never mentioned to her the need for retitling the property. Perhaps he just never got around to mentioning it, just as he never got around to doing it. Perhaps it just slipped his mind. Perhaps he didn't want Ms. Bouman to know what he was planning to do until he got around to doing it, or perhaps he didn't want her to know all the details of his estate planning (consistent with the fact, stated in her affidavit, that she never was shown the 1987 will). Or, perhaps, as plaintiff claims, Mr. Clancy never did tell Dr. Hurney to retitle the property.

The fact of the matter is that, because he is now dead, Dr. Hurney cannot be questioned as to the reasons for his silence, for which a number of speculative explanations could be laid before the jury, and, in the end, the jury would be left to guess the reason for it. In short, the Bouman affidavit is entirely too chimerical a basis for sending this case, full of sympathy for the disappointed plaintiff, to a jury.

In that plaintiff does not maintain that Mr. Clancy had any duty to draft a corresponding 1987 will for Mrs. Hurney with, for example, a pour-over testamentary trust (and, in light of Mr. Clancy's now incontrovertible testimony, there was no need for any such will in light of Dr. Hurney's expressed intention to retitle the property), and in that plaintiff does not allege that Mr. Clancy had a duty to exercise the powers of attorney he held as to the Hurneys' property to retitle it himself (which, again, he would have had no reason

to do given Dr. Hurney's assurances to him), the plaintiff simply has no case. Under this record, she was the victim of the procrastination of a man now dead and of the whims of the Fates, against whom she can no more have recovery in this Court than against Mr. Clancy.

For the reasons stated, an order will be entered separately, granting summary judgment to the defendant, with costs of these proceedings.

## JUDGMENT ORDER

For the reasons stated in a Memorandum Opinion of even date herewith, it is, by the Court, this 17th day of October, 1990, ORDERED and ADJUDGED:

1. That the defendant's motion for summary judgment BE, and the same hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, ENTERED for the defendant and against the plaintiff, with costs; and