**James J. LIESENER, et al.**

v.

**WESLO, INC., et al.**

**Civ. No. S 90–2152.**

United States District Court, D. Maryland.

Oct. 17, 1991.

Jacob A. Stein, Gerard E. Mitchell, Stein, Mitchell & Mezines, Warren L. Miller, Washington, D.C., for plaintiffs.

Joseph G. Finnerty, Jr., John J. Kuchno, Piper & Marbury, Baltimore, Md., for defendant Weslo.

William D. Coston, John P. Morrissey, Venable, Baetjer, Howard & Civiletti, Washington, D.C., for defendant Wal–Mart.

## MEMORANDUM OPINION

SMALKIN, District Judge.

### I.

This tragic case of a paralyzing backyard trampoline injury is before the Court on both defendants' motions for summary

judgment, as well as defendant Weslo's motion for partial summary judgment. No oral hearing is necessary. Local Rule 105, D.Md.

The case involves a circular trampoline manufactured and distributed by defendant Weslo and sold at retail by defendant Wal–Mart Stores (d/b/a Sam's Wholesale Club) to one James Huff in Atlanta, Georgia. Huff assembled the trampoline and placed it on the lawn of his home in Maryland in June of 1989. The trampoline was used by Huff and guests until the plaintiff in this case, then 17 years old, attempted a "back flip" (somersault) that disastrously ended in quadriplegia. The plaintiff never read the instruction manual which came with the trampoline and which had pages of detailed warnings, including a specific caution that most serious trampoline accidents result from somersaulting, and cautions to the owner not to allow anyone to use the device without reading the manual. Plaintiff did, though, read a warning notice and a red and white placard on the trampoline. The warning label and instruction placard contained the following relevant specific instructions:

### CAUTION

Misuse and abuse of this trampoline is dangerous and can cause serious injuries. Read instructions before using this trampoline. Inspect before using and replace any worn, defective or missing parts. Any activity involving motion or heights creates the possibility of accidental injuries. This unit is intended for use only by properly trained and qualified participants under supervised conditions. Use without proper supervision could be dangerous and should not be undertaken or permitted.

\* \* \* \* \* \*

9. Do not attempt somersaults without proper instructions and coaching or without the aid of safety apparatus such as overhead suspension training rig, or spotting mechanic [sic—parallel provision in instruction manual reads "machine"]. Most serious trampoline injuries occur during somersaults.

Before the bad landing that resulted in his quadriplegia, the plaintiff, who had had no instruction or coaching from a qualified gymnastics coach in somersaulting, had performed a number of somersaults successfully on the trampoline in question. The injury in suit happened when he landed on his head while attempting a three-quarter back flip somersault; the only other person in the vicinity was another teenager smoking a cigarette while "spotting." That teenager, though he was an accomplished gymnast and the best of the Huff backyard trampolinists, was unable to keep the plaintiff from landing on his head, although he attempted to do so.

The background facts relevant to all the motions, as described above, are not materially disputed. The plaintiff's product liability claim (although asserted under theories of negligence, warranty, and strict liability) is that the defendant Weslo did not adequately warn potential users of the dangers of serious or paralyzing injury from somersaulting.

### II.

Addressing first the motion of Wal–Mart Stores, the Court finds that there is no dispute that it sold the trampoline in an unaltered form, that it had no knowledge of the claimed design defect (*i.e.*, it had not received actual or constructive notice of any claim that the label warnings were defective), that Wal–Mart could not have discovered the claimed inadequacy in the exercise of reasonable care (in that the warnings carried on the product conformed to ASTM industry standards), and that it did not manufacture or alter the product in any way that contributed to the plaintiff's injury. There is, thus, no question that MD.CTS. & JUD.PROC.CODE ANN. § 5–311(b) (1989) insulates Wal–Mart from the product liability claims asserted against it, both *ex contractu* and *ex delicto*. The clear purpose of section 5–311 is to make the chickens of a poor design come home to roost with the manufacturer, not the retailer. As to the plaintiff's contention that he would not be able to enforce a judgment against the manufacturer, the af-

fidavit of counsel as to statements made by attorneys in the course of litigation about assets or insurance coverage of Weslo does not satisfy the requirements of *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), that the party opposing summary judgment come forward with evidence sufficient to generate a factual issue under the applicable standard of proof. Here, that standard of proof (on the relevant issue) is clear and convincing evidence, under section 5–311(c)(3), and the affidavit in question shows over a million dollars in insurance coverage remaining, which means that *a* judgment (even if not as large as plaintiff would hope to obtain) could be enforced against the manufacturer. Furthermore, the affidavit would be inadmissible under Fed.R.Evid. 408, because it incorporates statements made in settlement discussions, and, contrary to plaintiff's assertion, it is offered on the merits of a defense rather than on a merely collateral matter. Hence, it is incompetent to support a summary judgment opposition under the federal standards governing summary judgment, whatever might be the state law to the contrary. *See Wilson v. Clancy,* 747 F.Supp. 1154 (D.Md.1990), *aff'd,* 940 F.2d 654 (Table) (4th Cir.1991). In any event, there was no defect in the product for which Wal–Mart could be held liable even if section 5–311 were inapplicable, as will be more fully discussed below.

### III.

█ Although product liability cases frequently present issues that must be resolved by the trier of fact, *see, e.g., Hong v. Marriott Corp.,* 656 F.Supp. 445 (D.Md. 1987), it is also true that, in the appropriate case, summary judgment is available to the manufacturer, even where there is a claim of inadequate failure to warn. *See, e.g., Higgins v. E.I. DuPont de Nemours & Co.,* 671 F.Supp. 1055 (D.Md.1987), *aff'd,* 863 F.2d 1162 (4th Cir.1988).

Even giving plaintiff the benefit of the doubt on the admissibility of his experts' testimony, *but see Scott v. Sears Roebuck & Co.,* 789 F.2d 1052 (4th Cir.1986) (requisite reliability of "human factors" expert testimony) and *Wilson v. Clancy, supra,* the Court finds that, were this case at the directed verdict stage, no reasonable fact finder could conclude by a preponderance of the evidence that the warnings given by the manufacturer were inadequate. *See Anderson v. Liberty Lobby, Inc., supra.*

There is persuasive authority that the duty to warn in Maryland is essentially identical under the U.C.C. (as a component of the implied warranty of merchantability as to labelling under U.C.C. § 2–314(2)(e)), the law of negligence, and the law of strict liability, *i.e.,* there is a duty to provide a reasonable warning of latent defects. *Dechello v. Johnson Enterprises,* 74 Md.App. 228, 236, 536 A.2d 1203, 1207 (1988). There is, of course, no duty to warn of obvious dangers. *See Nicholson v. Yamaha,* 80 Md.App. 695, 566 A.2d 135 (1989), *cert. denied,* 318 Md. 683, 569 A.2d 1242 (1990). The question of obviousness of risk is objective, rather than subjective, under Maryland law, as stated in *Nicholson,* 80 Md. App. at 715, 566 A.2d 135.

The case law on trampoline injuries (especially as it relates to warnings) is surprisingly sparse. *See Annot., Products liability: trampolines and similar devices,* 76 A.L.R.4th 171. Although no Maryland case has addressed the obviousness of paralyzing injury from trampolines, the few cases in other jurisdictions that have done so have involved persons who subjectively appreciated the risks, which, the courts said, need not thus have been warned against. These cases, therefore, can be said to involve either assumption of the risk or lack of proximate cause, and they are fact-specific. *See, e.g., Burchinal v. Gregory,* 41 Colo.App. 490, 586 P.2d 1012 (1978) and *Garrett v. Nissen Corp.,* 84 N.M. 16, 498 P.2d 1359 (1972). The facts of the present case cannot, on summary judgment, fairly be taken to equate the present plaintiff's knowledge of trampolining risks with that of the plaintiffs in the two cases just cited.

The most recent case in the field appears to be the case annotated in 76 A.L.R.4th,

*viz., Van Dike v. AMF, Inc.*, 146 Mich.App. 176, 379 N.W.2d 412, *leave to appeal denied,* 424 Mich. 898 (1985). In *Van Dike,* a case involving paralysis from somersaulting on a backyard trampoline, the court rejected, with little enlightening discussion, the very theory plaintiff here espouses, *viz.,* that the manufacturer inadequately warned of the danger of crippling injury from somersaulting. It is true that there is authority for the proposition that specific warnings ought to be given, *Pell v. Victor J. Andrew High School,* 123 Ill.App.3d 423, 78 Ill.Dec. 739, 462 N.E.2d 858 (1984), but that case involved an injury from a landing off the trampoline, which occurred under very different circumstances from those of the present injury. (Plaintiff made a bad landing off the trampoline when her knee gave out.) Thus, the Court cannot say that the weight of authority supports the proposition that the risk here was so obvious that it need not have been warned against in the first place.

■ Even if, though, the danger in question were viewed as entirely latent, the warnings that were given were adequate as a matter of law. Users were specifically warned, both in the instruction manual and by a placard on the trampoline, of the risk of serious injury from performing somersaults without adequate coaching or mechanical precautions. To be reasonable, a warning need not notify the user of the physical cause or the physiological nature of the injury he risks from the product. *See Levin v. Walter Kidde & Co.,* 251 Md. 560, 248 A.2d 151 (1968) (where instructions told user how to use a syphon bottle, no liability for failure to warn of explosion in case of misuse). Good authority supports the proposition that a general warning of danger suffices, and the manufacturer need not warn of every mishap or source of injury that the mind can imagine flowing from the product. *See, e.g., Broussard v. Continental Oil Co.,* 433 So.2d 354 (La. App.), *cert. denied,* 440 So.2d 726 (La.1983) (product label not required to specify individual sources of hazard, so long as general warning of danger given), and *Jamieson v. Woodward & Lothrop,* 247 F.2d 23, 30 (D.C.Cir.) (*en banc*), *cert. denied,* 355 U.S.

855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957) (general warning of injury sufficient; no duty to catalog or warn of possibility of specific injury (detached retina)). The sound policy behind these rulings is the need to keep warnings simple and succinct enough to be readable and effective; the more detailed, the less chance there is that they will be read at all, thereby perversely increasing the risk of injury instead of lessening it. *See, e.g., Cotton v. Buckeye Gas Products,* 840 F.2d 935, 938 (D.C.Cir.1988), and *Vallillo v. Muskin Corp.,* 212 N.J.Super. 155, 161 n. 3, 514 A.2d 528, 531 n. 3 (1986). These cases also establish that the warnings' alleged inadequacies were not the proximate cause of the injuries sustained as a matter of law, *Cotton,* 840 F.2d at 937–38, and *Vallillo,* 212 N.J.Super. at 164, 514 A.2d at 532. The reasoning of the cited cases as to the adequacy of warnings as a matter of law is fully applicable to the present case, and it is adopted by this Court as dispositive of the present motion of Weslo for summary judgment. This result is also supported by the result in the only reported trampoline somersault case that closely approaches this one on the facts, *viz., Van Dike, supra.*

### IV.

■ Although mooted by the grant of summary judgment, the Weslo motion for partial summary judgment on the issue of punitive damages will be addressed in the interest of judicial economy, should there be an appeal from the grant of the plenary summary judgment motion. In that there is an absence of evidence sufficient to show malice by Weslo, *see, e.g., Sara Lee Corp. v. Homasote Co.,* 719 F.Supp. 417, 427 (D.Md.1989), punitive damages are out of the question. Certainly, Weslo's failure to follow the advice of its counsel, which flowed essentially from his understandable fear that the result in *Van Dike, supra,* might not be reached by other courts, is not outrageous conduct of the sort sufficient to support sending the punitive damages issue to the jury. It would be intolerable to hold that a manufacturer must, to escape punitive damages, follow the path

of timidity and greatest caution urged by counsel and shaped by the most pro-plaintiff result possible, especially where the manufacturer's conduct conforms to widely-recognized industry standards, such as the ASTM warning standard actually followed in this case. Counsel are, by nature, cautious in the extreme in advising clients who are in hazardous businesses, and understandably so, because of the penchant of the legal process for designing products by hindsighted judicial *fiat.* But it is not reckless conduct for manufacturers to follow accepted industry standards, even if counsel has urged a more cautious approach.

### V.

A final word should be said about the plaintiff's case. The masterful briefs submitted in opposition to summary judgment paint the picture of a tragedy of the worst sort imaginable. What parents' nightmare could be worse than finding their child paralyzed after an afternoon's fun at a friend's house? What could be worse for a vital teenager than to face a lifetime of quadriplegia? Certainly, plaintiff's opposition powerfully brings these points home, as well as the point that trampolines are dangerous. The Court finds itself sympathetic to this tragically injured young man and his family, but it must still exercise its duty to prevent a case insufficient in law from going before a jury.

For all the reasons stated, the Court will enter a separate order granting the motions of both defendants for summary judgment.