**Wilson M. HOOD, III, Plaintiff,**

v.

**RYOBI NORTH AMERICA, INC., Defendant.**

**No. CIV. AMD 97–4107.**

United States District Court, D. Maryland.

Aug. 24, 1998.

Michael B. Pross, Charles F. Fuller, McChesney & Dale, P.C., Bowie, MD, for Plaintiff.

Phillip Jacobson, Anderson, Coe & King, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff has filed a products liability action based on Maryland law in this diversity case. Defendant, the manufacturer of the miter saw at issue, has moved for summary judgment, and plaintiff has filed a cross-motion for summary judgment. No hearing is needed. For the reasons set forth below, the defendant's motion shall be granted and the plaintiff's motion shall be denied.

### (i)

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment if, when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Id.* at 248–49, 106 S.Ct. 2505. The opposing party's "response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence" will not support this finding. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. *Summary judgment must be entered against a non-moving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact ....'"* *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (emphasis added). In deciding the motion, the Court must view all inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### (ii)

On February 25, 1995, Hood purchased a Ryobi TS–254 ten-inch miter saw for use on home projects. Hood had extensive experience with power tools, and was generally familiar with safety issues surrounding their proper use. The saw came fully assembled, except for a dustbag, which was easily attached. The tool was accompanied by a seventeen page Owner's Operating Manual.

Prior to beginning to work with the saw the next day, Hood read the owner's manual, which contained warnings not to remove the upper and lower blade guards that were positioned on the saw. He began working with the saw in his driveway. After he was unable to complete a cut because the wood was too thick, he removed the blade guards from the saw. Removal of the blade guards allowed him to complete the cut. He then continued his cutting for about twenty minutes with the blade guards removed. While making a cut, and without warning, the blade flew off the saw, cut his thumb, his calf and his inner thigh, and then bounced across the roof of a truck parked nearby, coming to rest on a nearby lawn. Hood's injuries are severe and permanent.

The saw, its packaging and the owner's manual which accompanied it contained numerous warnings admonishing the user to operate the saw only with the blade guards in place. In particular, the owner's manual contained the following warnings and instructions:

"Safety Precautions

1. **KEEP GUARDS IN PLACE** and in working order." (p.2)

"**MITER SAW SAFETY**

\*　　\*　　\*　　\*　　\*　　\*

2. ALWAYS USE THE SAW BLADE GUARD. Never operate the machine with the guard removed." (p.3)

"WARNING: TO PREVENT POSSIBLE SERIOUS PERSONAL INJURY, NEVER PERFORM ANY CUTTING OPERATION WITH THE UPPER OR LOWER BLADE GUARD REMOVED." (p.9).

Additionally, the body of the saw contained the following warnings on labels or decals: "DANGER: DO NOT REMOVE ANY GUARD. USE OF SAW WITHOUT THIS GUARD WILL RESULT IN SERIOUS INJURY;" WARNING * * * 3. DO NOT operate saw without the upper and lower guards in place."

Hood read the warnings, but he believed that the danger warned against was limited to the risk that a user might allow his or her clothes and/or fingers to come into contact with the blade during a cutting operation. He was unaware of the likelihood that the result of removing the blade guards would be that the blade would become detached from the saw. In contrast, Ryobi had designed the saw so that the upper blade guard was an integral part of the saw, and it was fully aware that if the upper blade guard were removed from the saw, then the blade would detach. Indeed, sometime in the mid–1980's, a claim of precisely this sort had been asserted against Ryobi.

(iii)

Plaintiff sues in four counts. He alleges in count one of the second amended complaint claims for negligent design, negligent manufacture, negligent testing and negligent warning; in count two, breach of express and implied warranties under the Uniform Commercial Code; in count three, strict products liability, i.e., defective design, defective manufacture and inadequate warning; and in count four, a derivative claim under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et seq.

 To recover on a theory of strict liability in Maryland, a plaintiff must establish that:

(1) the plaintiff was the user or consumer of an alleged defective product;

(2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product;

(3) at the time of sale the product was defective;

(4) the product reached the plaintiff without substantial change in the condition in which it was sold;

(5) the defect made the product unreasonably dangerous to the plaintiff; and

(6) the defect proximately caused plaintiff's injuries.

See Phipps v. General Motors Corp., 278 Md. 337, 363 A.2d 955 (1976); Restatement (Second) of Torts § 402A (1965). A product defect, which renders the product unreasonably dangerous, might arise from the design of the product, a deficiency in its manufacture or from the absence or inadequacy of any instructions or warnings as to its safe and appropriate use. Simpson v. Standard Container Co., 72 Md.App. 199, 527 A.2d 1337, 1339–40 (Md.Ct.Sp.App.), cert. denied, 311 Md. 286, 533 A.2d 1308 (1987). A negligence theory of products liability, in contrast, focuses upon the reasonableness of the manufacturer's acts and omissions, including the reasonableness of any warning, rather than upon the existence of a defect in the product itself. Cf. Eagle–Picher Industries, Inc. v. Balbos, 326 Md. 179, 604 A.2d 445, 452 (1992). "The elements of proof are the same whether the claim be characterized as one for strict liability or negligence ... or breach of warranty." Watson v. Sunbeam Corp., 816 F.Supp. 384, 387 n. 3 (D.Md.1993)(citing Tauber v. Nissan Motor Corp., USA, 671 F.Supp. 1070, 1073 (D.Md.1987); Jensen v. American Motors, 50 Md.App. 226, 437 A.2d 242, 247 (Md.Ct.Sp.App.1981); Singleton v. International Harvester Co., 685 F.2d 112, 117 (4th Cir.1981); Frericks v. General Motors Corp., 274 Md. 288, 336 A.2d 118 (1975)).

Recognizing that appellate decisions have affirmed the action of trial courts in taking from the jury claims arising from a consumer's removal of blade guards from a saw in disobedience to plain warnings not to do so (or where consumers otherwise altered the condition of a saw), see generally, Michael G.

Walsh, Annotation, *Products liability: mechanical or chain saw or components thereof,* 22 A.L.R.4th 206, §§ 3, 5 (1983 & 1997 Supp.), Hood asserts that the gravamen of his claims is the design element which allows the saw to operate with the blade guards removed, notwithstanding the apparent certainty that the blade will eventually detach during a cutting operation with the blade guards removed, and, as an independent ground of recovery, the absence of a specific warning that such an enhanced risk of harm is present.

Plaintiff relies most heavily upon his inadequacy of warning theory, and he asserts that Defendant's failure to warn of the detachment risk rendered the saw unreasonably dangerous.[1] Plaintiff's expert, a safety engineer, specifically testified that the warnings are not adequate because they do not identify the secondary risk (i.e., detachment) of removing the blade guards. Plaintiff urges the court to apply the two-pronged test of adequacy of warning set forth in *Spruill v. Boyle–Midway, Inc.,* 308 F.2d 79 (4th Cir.

1962), which declares that a warning should be "of a character reasonably calculated to bring home to the reasonably prudent person the nature and extent of the danger." [2]

Plaintiff contends that although the warnings are clear, they fail the second prong of the test because they do not explain what he regards as the genuine nature of the danger: that the blade will detach from the saw if the consumer removes the guards.[3] To some degree, he argues, a reasonable person may understand the extent of the danger a sharp blade may pose, but it is not foreseeable that the blade would fly through the air, posing a risk of lacerative injury to the user as well as to persons and property nearby.

Ryobi counters that Hood would not have suffered the lacerative injury he incurred if he had followed the clear and concise warnings that are located throughout the owner's manual and on the saw itself. Ryobi contends that the warnings were adequate as a matter of law. Ryobi points out that even Hood's expert agreed on deposition that Hood acted

---

1. Plaintiff also contends that even with the blade guards intact, the saw was defective and unreasonably dangerous. This contention is asserted only in passing, is unsupported by substantial expert opinion evidence, and is otherwise wholly lacking in evidentiary or case law support. Plaintiff's contention seems to be that because Ryobi could foresee that a small percentage of the users of its product would disregard the warnings not to remove the blade guards, this knowledge rendered the saw "defective" in its design for failing to take into account such foreseeable use. The Restatement, on which the Maryland law of strict products liability is based, fatally undermines this theory. *See* § 402A of the Restatement (Second) of Torts, cmt. j (1965)("Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.").

2. The two prongs of the test are:
 first, [the warning] must be in such form that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use; secondly [sic], the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.
 308 F.2d at 85. Although its articulation of the test of adequacy of warning seems fairly univer-

sal, it must be noted that the persuasive authority of *Spruill,* which involved Virginia law, is considerably weakened, at best. *See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 57 n. 4 (1988)(observing that Virginia law generally does not permit tort recovery on a strict liability theory in products liability cases); *see also Cotton v. Buckeye Gas Products Co.,* 840 F.2d 935, 938–39 (D.C.Cir. 1988).

3. Emphasizing that the adequacy of a warning is ordinarily a fact question properly submitted to a jury, Plaintiff asserts that it would be reasonable for a jury to conclude that Ryobi should have explained with greater particularity the nature of the danger attendant to the removal of the upper blade guard. He supports this contention with evidence of the fact that a competitor in the market, Sears, gave a specific warning with its ten-inch compound miter saw, "DANGER: Never use saw without mounting plate securely in place. It keeps the arbor screw from falling out if it accidentally loosens, and prevents the spinning blade from coming off the machine." Ironically, even that warning was alleged by one plaintiff to be inadequate, however, the court avoided decision of the issue because it concluded Canadian law, which does not recognize strict products liability principles, applied to the accident. *See Dorman v. Emerson Electric Co.,* 23 F.3d 1354, 1361 (8th Cir.1994), *aff'd after remand,* 1995 WL 445723 (8th Cir. July 28, 1995).

unreasonably in removing the guards. Ryobi contends that, the warnings being adequate to caution against both the harm that Hood expected and the harm he suffered, i.e., lacerative injuries from the saw's rapidly rotating blade, even if not in precisely the manner in which he might have anticipated, Hood's negligence claims are barred by his own contributory negligence, and his strict liability and warranty claims are barred by the doctrine of substantial alteration.

### (iv)

■ Having considered the competing contentions of the parties, I am persuaded that reasonable minds could come to but one conclusion on this record, namely, that in disregard of legally adequate warnings, Hood disassembled the saw by removing the blade guards, thereby rendering it defective and unreasonably dangerous, and that as a result, he suffered precisely the kind and nature of harm the warnings sought to avoid. *See Simpson*, 527 A.2d at 1341–42 (where, contrary to warnings to keep can away from children and out of living area, plaintiff left a can of gasoline in the basement of his home and children were injured and/or killed in fire they started while playing with gasoline, plaintiff barred from recovery by his own acts); *cf. Hagans v. Oliver Mach. Co.*, 576 F.2d 97, 102 & n. 5 (5th Cir.1978)(applying Texas law and holding that manufacturer of miter saw had no duty to warn of the danger of removing a safety guard;"[o]ne can imagine no more obvious danger than that posed by the jagged edge of a circular saw blade spinning at 3600 revolutions per minute."); *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 590–91 (6th Cir.1986)(although on the facts removal of blade guard was not a "substantial change" as to a design defect claim, court sustained directed verdict on the basis of assumption of the risk, noting: "The district court reasoned that Peter Briney knew that a compound miter cut was a "thru-cut", the Owner's Manual required the blade guard to be in place for all thru-cuts; Briney had read and understood the Manual's instructions; the dangers were obvious; and both the Manual and table saw had descriptions of the dangers. We agree with the district court that this is substantial evidence to establish that Briney was aware of the risks involved with an unguarded blade and that he voluntarily removed the guard. Although appellants' theory rests on the presumption that the design of the blade guard caused him to remove the guard, this court cannot ignore the obviousness of the danger and the voluntariness of Briney's actions, even if Briney's actions were reasonably foreseeable by the manufacturer. As a matter of law, therefore, we conclude that Briney assumed the risk, and that his strict products liability claim is barred."). Accordingly, his claims are barred.

The only "defect" in the saw was the lack of blade guards. By removing the blade guards, Plaintiff effected a substantial alteration to the saw. This alteration was the actual cause of his injuries; it was the very defect that caused the harm for which he seeks compensation. *See Singleton v. Manitowoc Co., Inc.*, 727 F.Supp. 217, 222 (D.Md. 1989), *aff'd without op.*, 931 F.2d 887 (4th Cir.1991). Moreover, the foreseeability that a small segment of consumers could be expected to effect a substantial alteration does not alter this analysis. *See Banks v. Iron Hustler Corp.*, 59 Md.App. 408, 475 A.2d 1243 (Md.Ct.Sp.App.1984); *see also Robinson v. Reed–Prentice Div. of Package Machinery Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980); *Briney.*

As Plaintiff asserts, a warning should reasonably catch the attention of the consumer and reasonably indicate the extent and nature of the potential danger posed by use of the product. In *Liesener v. Weslo, Inc.*, 775 F.Supp. 857, 861 (D.Md.1991), the court held that "a warning need not notify the user of the physical cause or the physiological nature of the injury he risks from the product." In *Liesener*, a seventeen-year-old boy read the warnings on a placard attached to a neighbor's trampoline before he used it. The warning told all users, *inter alia*, to read the owner's manual before using the trampoline and that serious injury most often resulted from somersaults on the device. The plaintiff abjured this warning, performed somersaults and suffered injuries rendering him a quadriplegic. The court granted summary judgment in favor of the manufacturer. The court held that "a general warning of danger

suffices, and the manufacturer need not warn of every mishap or source of injury that the mind can imagine flowing from the product." *Id.* (collecting cases); *and see Stalnaker v. General Motors Corp.*, 972 F.Supp. 335, 336 (D.Md.1996)("On the adequacy of warning claim, there is no need for the warning to specify the nature of the injury to be expected from noncompliance."), *aff'd without op.*, 120 F.3d 262 (4th Cir.1997).

Hood admits in his deposition that he read the warnings, but he decided to remove the guards anyway, allegedly because he did not comprehend the nature of the risk of neglecting to heed the warning. This contention is unavailing. Perhaps Hood did not know from the warnings *exactly* how he would get cut by the blade, but the law imposes no requirement on the manufacturer to provide that level of detail. *Stalnaker; Liesener.* The dispositive fact is that he clearly understood the nature of the *harm* to which he voluntarily subjected himself by removing the blade guards, i.e., severe lacerating injuries from getting cut by the blade.

(v)

In conclusion, Defendant is entitled to judgment as a matter of law because reasonable minds could not disagree that it took adequate measures to warn its consumers of the risks of severe lacerating injury from the operation of the miter saw with the blade guards removed, and that, tragically, is the very harm suffered by the Plaintiff here. An order follows.

ORDER

In accordance with the foregoing memorandum, it is this 24th day of August, 1998, by the United States District Court for the District of Maryland,

(1) ORDERED that the Defendant's Motion for Summary Judgment be, and it hereby is GRANTED, that the Plaintiff's Motion for Summary Judgment be, and it hereby is DENIED, and judgment is hereby entered in favor of Defendant; and it is further

(2) ORDERED that the Clerk of the Court CLOSE this case and TRANSMIT copies of this order and the foregoing memorandum to the attorneys of record.